### UNITED STATES v. HURLEY.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1910.)

No. 3,285.

1. CONTRACTS (§ 284*)—PERFORMANCE—DETERMINATION BY THIRD PERSON—CONCLUSIVENESS.

Where determination of the question of due performance of a contract is committed to a third person, with the provision that his decision shall be final, his acts within the scope of his authority are conclusive on both contracting parties, in the absence of fraud, or such gross mistake as would imply fraud, or a failure to exercise an honest judgment.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 284.*]

2. UNITED STATES (§ 73*)—CONTRACTS—AUTHORITY OF SUPERVISING OFFICER—CONCLUSIVENESS OF ACTS.

The provisions of a contract for government work stated, and held to be equivalent to a provision that the certificate of the officer in charge as to due performance shall be conclusive.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 56; Dec. Dig. § 73.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Joseph A. Hurley, doing business as Hurley & Co., against the United States. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles C. Houpt, U. S. Atty.

Walter L. Chapin, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge. In an action by Joseph A. Hurley against the United States to recover a sum of money conceded to have been earned, the latter, under section 6 of the Tucker act (Act March 3, 1887, c. 359, 24 Stat. 506 [U. S. Comp. St. 1901, p. 755]), set up a counterclaim for damages for failure of Hurley to perform properly a construction contract, the work under which had been completed, accepted, and paid for more than four years before. It was alleged by the government that the army officer authorized to supervise the performance of the contract "carelessly, negligently, and wrongfully" permitted Hurley to do various things contrary to the contract, and to omit others provided for therein, and approved the work, and certified that it had been duly performed, thereby misleading its other officers and agents, and inducing them to accept what had been done and to pay the full contract price. The trial court sustained a demurrer to the counterclaim and rendered judgment for Hurley.

It has frequently been decided by the Supreme Court and by this court that where the question of the due performance of a contract is committed to a third person, with a provision that his decision shall be final, what he does within the scope of the authority so conferred is conclusive upon both of the contracting parties in the absence of fraud or such gross mistake as would imply fraud or a failure to exercise an honest judgment. In the case at bar, however, it was not alleged by the government that the certificate of the officer in charge, upon which Hurley was paid the contract price, was the result of fraud or such gross mistake. The question in the case is, therefore, reduced to this: Was it provided in the contract and the specifications, which were part of it, that the decision of the officer should be final or conclusive?

We find the following provisions in the contract and specifications: The work is to be executed under the direction and to the satisfaction of the United States officer in charge and in conformity with his instructions. The materials, labor, etc., shall accord with the true intent and meaning of the drawings and specifications, of which intent and meaning the officer in charge shall be the interpreter. The officer in charge may require the contractor to dismiss such workmen as he deems incompetent or careless, and is to have at all times access to the work, which is to be entirely under his control. In all cases where an article is mentioned, followed by the words "best quality," "approved quality," or "other equally good," etc., the officer in charge shall decide what is the best and most suitable article to use. Additional detail drawings will be furnished of such por-

tions of the work as the officer in charge may desire to explain more fully, and work not constructed according to the details so furnished, except by permission expressly obtained, must be taken down and replaced with other work, in accordance with them, at the contractor's expense, if so directed by the officer in charge. The contractor must understand that the materials and labor, at any and all times during the progress of the work and before final acceptance and payment, shall be subject to inspection of the officer in charge, or other authorized agent of the government, with full right to accept or reject any part thereof, and if he does not remedy defective or unsatisfactory materials or work and remove condemned materials the officer in charge may have the same done at the contractor's cost. When required by the officer in charge, the contractor shall furnish him in advance with samples of the material he proposes to use, and samples so furnished must, after having been approved, be adhered to. The contractor will be held responsible for all delays caused by rejection by the officer in charge of material of any kind which is found unfit for use or does not conform to samples furnished. No work of any kind shall be covered up until inspected by the officer in charge. The work shall at all times be subject to inspection on the part of the United States, and all material used and the character of the workmanship employed shall conform to the requirements of the specifications, as shall be determined by the government or its authorized agent. Payments on the contract price to be made at such times and in such amounts as the officer in charge may elect, based on his estimates of completed work, 20 per centum of each to be retained until final completion and acceptance by the government of the work under the contract.

In the construction of these provisions the government relies strongly upon Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811, and United States v. Walsh, 52 C. C. A. 419, 115 Fed. 697. In the first of these cases it was quite apparent that the letter of the contract and specifications was to be finally controlling where it was unambiguous, and not the certificate of due performance of the architect who supervised the work. Among the provisions referred to by the court was one that a certificate of the architect of work done during progress should in no way lessen "the total and final responsibility of the contractor; neither shall it exempt the contractor from liability to replace work, if it be afterwards discovered to have been done ill, or not according to the drawings and specifications either in execution or materials." It was held that the whole contract showed the certificate was not intended to be conclusive. The court said:

"To make such a certificate conclusive requires plain language in the contract. It is not to be implied."

In United States v. Walsh the authority of the engineer in charge was plainly limited, and the departures from the specifications were not in matters of performance which were left to his control. In the case at bar it is provided that all material and work shall conform to the requirements of the specifications, "as shall be determined"

by the government or its authorized agent, and there are provisions in the specifications, under the title "General Conditions," that the work shall be executed under the direction, to the satisfaction, and in conformity with the instructions of the officer in charge, and that he shall be the interpreter of the true intent and meaning of the drawings and specifications. The work was to be "entirely under his control." While the conclusiveness of the decision of the engineer, architect, or other person in control and supervision may not be implied, but must plainly appear, it is not necessary that any set form of words be used to express the purpose.

As in any other construction of a written instrument, it is sufficient if the intent be clear and unambiguous. Thus in Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106, a contract for transportation of military stores provided as follows:

"Transportation to be paid in all cases according to the distance from the place of departure to that of delivery, the distance to be ascertained and fixed by the chief quartermaster of the district of New Mexico, and in no case to exceed the distance by the usual and customary route."

The contract was silent as to whether the distances should be estimated by air line, by route usually traveled by contractors conveying government stores, or by the road over which troops ordinarily marched; but the court held the action of the chief quartermaster was conclusive upon both parties to the contract. The absence of precise words of finality in the contract was referred to in United States v. Gleason, 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284. Of similar import in the particular in question is Sheffield, etc., Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343, 38 L. Ed. 164, cited in Mercantile Trust Co. v. Hensey, supra, as authority for the rule there announced.

We think that in the case at bar the conclusiveness of the certificate of the officer in charge, who had complete control of every step in the work, and whose every direction the contractor was bound to obey, appears unavoidably from the force of the language employed in the contract. Final acceptance of the work and payment, followed by more than four years of acquiescence, would seem to suggest that was also the view of the government.

The judgment is affirmed.