### BERGER MFG. CO. v. HUGGINS et al. *

(Circuit Court of Appeals, Eighth Circuit. May 7, 1917.)

No. 4759.

1. CONTRACTS ⬦⟹284(4)—BUILDING CONTRACTS—CONSTRUCTION.

A contract between a general contractor and the subcontractor declared that, should any of the work done or materials provided by the subcontractor be unsatisfactory to the architects, then such subcontractor should immediately remove such unsatisfactory work or materials and supply the place thereof with other work and materials satisfactory to the architects or general contractor. The contract further declared that should any question arise during the progress of the work, it should be referred to the architect, whose decision should be binding on both parties. The specifications contained a test for concrete floors to be made after they had been in place for 45 days, but the architect, before the laying of floors, disapproved floor joists constructed by the subcontractor. *Held*, that such disapproval by the architect was binding on the subcontractor, though the architect rejected the joists without waiting for the construction of the floors, as they would have been rejected if constructed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1330.]

2. CONTRACTS ⬦⟹284(4)—BUILDING CONTRACTS—CONSTRUCTION.

Where the general contractor and subcontractor agreed that the work of the subcontractor should be satisfactory to the architect, his judgment made in good faith is conclusive.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1330, 1331.]

3. CONTRACTS ⬦⟹303(5)—PERFORMANCE—DEFENSES.

Where a subcontractor in turn sublet the manufacture of some of the materials which were to be installed in a building, such subcontractor

---

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied August 9, 1917.

cannot excuse his own nonperformance by reason of the default of his chosen agency.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1434–1439½.]

4. INTEREST ☞12—FILING OF LIEN—DAMAGES.

A subcontractor filed a mechanic's lien against a building, and the owner withheld a large balance due the general contractor. Rev. St. Mo. 1909, § 8233, authorized the owner to withhold such sum. The subcontractor's claim for lien was disallowed, but there was no showing that it acted maliciously or without probable cause. *Held* that, as the subcontractor was not required to give bond on the filing of its lien claim, and as there was no showing that it acted maliciously, etc., the general contractor is not entitled to recover from the subcontractor the value of the use of the balance withheld by the owner during the period of withholding.

[Ed. Note.—For other cases, see Interest, Cent. Dig. § 23.]

Appeal from the District Court of the United States for the Western District of Missouri.

Suit by the Berger Manufacturing Company against trustees of the William Jewell College and George W. Huggins, who counterclaimed. From a decree for the last-named defendant, plaintiff appeals. Modified.

John L. Wheeler and John C. Nipp, both of Kansas City, Mo., for appellant.

William C. Michaels, of Kansas City, Mo. (Delbert J. Haff, Edwin C. Meservey, and Charles W. German, all of Kansas City, Mo., on the brief), for appellees.

Before CARLAND, Circuit Judge, and RINER and MUNGER, District Judges.

MUNGER, District Judge. Appellant, the Berger Manufacturing Company, brought suit in the court below against George W. Huggins and the trustees of William Jewell College, seeking to establish and foreclose a mechanic's lien. Mr. Huggins was a contractor, and had made a successful bid to the trustees for the erection of a dormitory building according to plans and specifications that had been prepared by Felt & Co., architects, for a building not of fireproof material. The Berger Company induced the college trustees to adopt its system of fireproof construction, and the contract as finally entered into between Huggins and the college trustees required the contractor to use the Berger system. Huggins made a written contract with the Berger Company for the installation of its materials and out of the construction of that contract have grown the controversies involved in this suit.

In general, the contract bound the Berger Company to furnish the materials and to put in place the structural steel and iron work, iron stairs, and the metal fireproofing, according to the plans and specifications of the architects and within a time limited. An addendum to these plans and specifications attempted to cover the changes made necessary by the substitution of metal for lumber. The Berger Company was unable to reach a satisfactory settlement for the service and materials it supplied, and filed a lien for the balance it claimed to

be due. The college trustees have acknowledged owing a balance either to Huggins or the Berger Company, and averred a readiness to pay it to the one to whom it may belong. Huggins has contested the claim of lien of the Berger Company, and has presented a counterclaim. The case was referred to a master, whose findings and report stated an account between Huggins and the Berger Company, found a balance due to Huggins, and disallowed the lien.

The trial court, after argument on exceptions to the report, entered a decree canceling the lien, and awarding a balance to Huggins. The court disallowed some items found to be due by the master and allowed some items the master had rejected. The briefs cover a wide field in argument, but the real issues of the case are found in smaller area. One of the master's findings, approved by the court, allowed the sum of $1,500 to Huggins because the Berger Company delayed in the performance of the work. The contract required the work to be begun at once, to be done within three months, and to be so performed as not to cause any delay or inconvenience in other construction work. Appellant contends that it caused no delays that injured Huggins, but was itself delayed by him. A number of claimed delays are in issue. The evidence has been examined relating to them, and no useful purpose would be served by detailing it, as questions of fact only are involved. It is sufficient to sustain the findings of the master, approved by the court, that the delays were the fault of the Berger Company, and that the contractor complied with the requirements of his contract. The decree allowed this amount as the difference between the cost of construction paid by Huggins and the amount it would have cost Huggins to perform this work, if the Berger Company had not delayed and disorganized it. The only evidence offered on the amount of these damages was given on behalf of Huggins, and would have supported a much larger credit allowance to him. The appellant invokes the rule that damages will not be apportioned between parties in mutual fault, but the finding that there was no delay by Huggins renders the rule inapplicable.

[1, 2] The master and the trial court allowed two items of damages against the Berger Company for the expense of reconstructing floors, the roof, and other portions of the building, which the Berger Company had undertaken to construct. The joists of these floors were spaced at a distance between centers that the Berger Company claimed was in compliance with plans which it had submitted to the architect and he had approved before the work was begun. After the joists were placed the contractor had a test made, and found a deflection that he reported to the architect. The architect disapproved of the proposed construction and required a reinforcement of the joists. The Berger Company was notified of this decision, but failed to supply the additional members, and the contractor, following the architect's direction, incurred the expense mentioned. There were a number of provisions in the contract of the Berger Company subjecting the work to the approval of the architects. Among them was the following:

"In case any of said work done or materials provided by the said party of the second part shall be unsatisfactory to the architects, then the said party

of the second part will, on being notified thereof by the architects, or general contractor, immediately remove such unsatisfactory work or materials, and supply the place thereof with other work and materials satisfactory to the architects or general contractor."

"If any question should arise during the progress of the work or in the settlement of accounts, it is to be referred to the architects, whose decision shall be binding upon both parties; but there is reserved the right of final decision in all such questions by two disinterested parties, one chosen by each party to this agreement, at his own expense, and in the event of the parties so chosen failing to agree, they are to have the power to choose a third at the joint expense of both parties hereto; and the decision of two of the referees so chosen shall be binding on both parties."

In the original specifications there was a certain test provided for the concrete floors then contemplated, to be made after the floors had been in place for 45 days, and the Berger Company contends that this test was the limit of the architect's authority. The provisions quoted from the contract refute this contention. The preliminary approval of the Berger Company plans was not the only permissible use of the architect's discretion, for the contract allowed the condemnation of "work done or materials provided." Neither was the judgment of the architect required to be based on any particular tests. The amount of deflection of the floor joists when the test load was applied to them, and the probable effect of that deflection upon the terazzo floors to be laid upon them, when such floors should be put to the strain of use, justified the architect in condemning them and in avoiding the delay that would ensue if the floors were finished before a test was made. Some criticism is made of the method employed in making a test of the roof material, but the architect's decision does not depend upon the results of this test. As the parties committed their work to the satisfaction of an arbiter, his judgment, when reached in the exercise of good faith is conclusive. Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; United States v. Hurley, 182 Fed. 776, 105 C. C. A. 208; Frisco Lumber Co. v. Hodge, 218 Fed. 778, 134 C. C. A. 456. The amount allowed because of these deficiencies was not the subject of an exception by the Berger Company.

[3] The court affirmed an allowance of a credit to Huggins for the failure of the Berger Company to furnish some gas pipe railings and thresholds. The complaint made of this allowance is based on the fact that the Berger Company sublet the manufacture of some parts of the metal, including these articles, to another contractor, who should have delivered the articles, and finally did so, but too late. There is no merit in this complaint, as the Berger Company could not excuse the nonperformance of its contract by the default of its chosen agency.

There were some negotiations between the architect and the Berger Company looking to an alteration of the plans for the stairway; but in its written contract the Berger Company agreed to build the stairs according to the original plans. After they were constructed, they were condemned and ordered removed by the architect, under the authority given him by the contract, and Huggins, after removing them, had them replaced by stairs to conform to the plans. For

this there were credits allowed by the master and approved by the court. A weak attempt is made to claim that there was a contract between the parties authorizing the stairs to be built as attempted by the Berger Company; but there is no evidence of any alteration of the written contract, and these credits, unchallenged otherwise, must be allowed.

In the contract each party agreed that, in case of the violation of the terms of the agreement, he would pay all costs, expenses, and reasonable attorney's fees incurred by the other party on account of such violation, or in enforcing its obligations, and that these expenses and fees might be included in the judgment in any suit on the contract. An allowance was made to Huggins for the value of attorney's services in advising him on questions arising under the contract and in enforcing his claim against the Berger Company. The only objection made to this allowance in the specification of errors is because appellant should not have been found to be in any default; but as this objection has been held ill-founded, no further consideration of the objection is required.

[4] The Berger Company filed its claim of lien on February 10, 1912, and within 90 days thereafter brought this suit. In the counterclaim of the defendant Huggins was an averment that the college trustees had withheld from him a balance of about $10,000 after the date of notice of the Berger Company's lien on the building, and a prayer that he be allowed a judgment against appellant for an amount equivalent to 6 per cent. annual interest on the amount so withheld. The trial court included in its decree an amount to that date in accordance with this prayer, and decreed that the Berger Company should pay a further sum equal to 6 per cent. on the principal sum until this decree should be satisfied. Soon thereafter the college trustees paid into the registry of the court the money it had previously retained. In support of this allowance is cited the statute of Missouri (section 8233, Rev. Stats. Mo. 1909), which allows the owner of the property to withhold from the contractor the amount of money for which such lien shall be filed. It is said that Huggins has lost the use of this amount of money during the pendency since the lien was filed, and as appellant was not entitled to a lien, Huggins should have compensation for this loss. There is no agreement in the contract to pay the contractor for the use of money withheld by the owner, nor is there any provision in the statute that requires such compensation, if the claim of lien is not sustained. There is neither pleading nor proof that the Berger Company acted maliciously and without probable cause in filing its lien claim or in prosecuting this suit. No case has been cited that sustains a recovery against the claimant because of the filing of a claim of mechanic's lien.

The fact that the contractor was deprived of the use of this money withheld by the owner because of these proceedings is not decisive of the question. In the United States courts the damages sustained by one enjoined, where no bond is given, cannot be recovered from the party obtaining the injunction, unless the defendant can make out a case of malicious prosecution. Meyers v. Block, 120 U. S. 206, 7 Sup. Ct. 525, 30 L. Ed. 642; Scheck v. Kelly (C. C.) 95 Fed. 941; In

re Williams (D. C.) 120 Fed. 34; United States v. Lewis Pub. Co. (C. C.) 160 Fed. 989. See also Rieger & Co. v. Knight, 128 Md. 189, 97 Atl. 358, L. R. A. 1916 E, 1277–1282.

The seizure of a defendant's goods in an action of bankruptcy does not subject the plaintiff, who obtains such seizure to an action for damages, if his suit is brought in good faith. Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116. In the last case cited it was said:

> "The jury were positively instructed to return a verdict for the plaintiff independently of any consideration of malice in the institution of the bankruptcy proceedings, or want of probable cause therefor. If the charge was correct, then every man who brings a suit against another, with the most firm and reasonable belief that he has a just claim, and a lawful right to resort to the courts, is responsible in damages for the consequences of his action, if he happens to fail in his suit. His intentions may have been most honest, his purpose only to secure his own, in the only way in which the law permits it to be secured; he may have had no ill feeling against his supposed debtor, and may have done nothing which the law forbids. Such is not the law. It is abundantly settled that no suit can be maintained against an unsuccessful plaintiff or prosecutor, unless it is shown affirmatively that he was actuated in his conduct by malice, or some improper or sinister motive. Malice is essential to the maintenance of any such action, and not merely (as the Circuit Court thought) to the recovery of exemplary damages. Notwithstanding what has been said in some decisions of a distinction between actions for criminal prosecutions and civil suits, both classes at the present day require substantially the same essentials. Certainly an action for instituting a civil suit requires not less for its maintenance than an action for a malicious prosecution of a criminal proceeding."

Statutes usually protect defendants against damages by requiring the giving of bonds in such special remedies as attachment, replevin, injunction, receivership, and arrest and bail. In the absence of any statutory provision on the subject, the plaintiff was not subject to any other penalty for instituting this suit, in good faith, than the ordinary burden of such decree for costs in the case might require. The statutory right to file its claim of lien, and the right of the owner to defer payment to him pending determination of the validity and amount of the lien, were facts that the contractor was bound to know, and to take into consideration, when he made his agreement with the owner for the construction of the building. The portion of the decree which allows damages to the contractor for the loss of the use of the money withheld by the owner because of the filing of this claim of lien and prosecution of this suit must be held to be erroneous.

There are other questions which have been presented, and each has been considered; but the conclusions already announced dispose of all questions properly before the court. The decree of the lower court is modified in accordance with this opinion, by reducing the amount of judgment in favor of the defendant Huggins against the plaintiff from $2,638.86 to the sum of $634.50, and the eleventh paragraph of the decree, providing for the recovery from the plaintiff by the defendant Huggins, of a sum equal to 6 per cent. on the amount withheld by the college trustees from the date of the decree until the decree shall be satisfied, is vacated and set aside, and the decree, as thus modified, is affirmed. The costs in this court will be divided, each party to pay one-half.