AMERICAN PIPE & CONSTRUCTION CO. v. WESTCHESTER COUNTY.

(Circuit Court of Appeals, Second Circuit.    July 6, 1915.)

No. 236.

1. COUNTIES ⬡➡114—OFFICERS—SEWER CONSTRUCTION BOARD—SCOPE OF AGENCY—STATUTE.

Under Laws N. Y. 1905, c. 646, creating the Bronx Valley sewer commission, with authority to construct a sewer, and declaring that contracts therefor should be executed in triplicate by the contractor, on the one part, and the sewer commissioners, "acting for the county of Westchester," on the other part, where the sewer work was done in accordance with the contract with the commissioners, the county was liable therefor, since the commissioners acted for the county as its duly authorized agent.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 174, 175; Dec. Dig. ⬡➡114.]

2. COUNTIES ⬡➡129—CLAIMS—ENFORCEMENT.

Under the County Law (Consol. Laws N. Y. c. 11), where a duly authorized county sewer commission contracted for the construction of a sewer, and upon completion of the work refused to audit certain of the

contractor's claims, such contractor was not remitted by the refusal to mandamus and certiorari, or an action in equity for its remedy, but could sue at law.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 197; Dec. Dig. ⊚⇒129.]

3. COUNTIES ⊚⇒129—CLAIMS—DEFENSE—ACTION AT LAW FOR PARTIAL BENEFIT.

Where a duly authorized county sewer commission contracted for the construction of a sewer, which would benefit only a portion of the county upon completion the county could not, in an action at law, resist the contractor's claim on the ground that, if the plaintiff obtained judgment, it would result in compelling the whole county to bear the expense of an improvement beneficial to only part of the county, there being no method by which, in an action at law, the county authorities could be compelled to confine a tax levy necessary to pay plaintiff's demand to the limited area benefited, since the right which a creditor has to obtain payment of a county is not to be confused with the right of the county to obtain funds with which to pay his claim; the manner in which taxes must be levied legally to pay all the bonds given to raise money to pay debt in such a case not affecting plaintiff's right to a judgment.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 197; Dec. Dig. ⊚⇒129.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on writ of error to review a judgment of the United States District Court for the Southern District of New York, which dismissed the complaint upon the ground that the plaintiff could not proceed at law.

The American Pipe & Construction Company, plaintiff herein, is a corporation organized and existing under the laws of the state of New Jersey, and duly filed the statement and designation required by the General Corporation Law of the state of New York in the office of the secretary of the state of New York, and has otherwise complied with the laws of that state authorizing foreign corporations to do business in New York. The Mack Paving & Construction Company, hereinafter mentioned, is a corporation organized and existing under the laws of the state of Pennsylvania, and it likewise has complied with the laws of the state of New York authorizing foreign corporations to do business in the state. The defendant is a municipal corporation created and existing under the laws of the state of New York and residing in the Southern district thereof.

The defendant, it is alleged, entered into a contract on January 16, 1908, with the plaintiff's assignor, the Mack Paving & Construction Company, hereinafter referred to as the Paving Company. The contract, however, was made directly with the Bronx Valley sewer commission. That commission was created by chapter 646 of the Laws of the State of New York for the year 1905, and by acts supplemental and amendatory thereto; and it is claimed that in what the commission did in this matter it was acting for and bound the county of Westchester. The contract of January 16, 1908, provided that the Paving Company should construct, complete, and equip for the county of Westchester certain sections of what is known as the "Bronx Valley sewer." That contract was modified subsequently by a farther contract of May 5, 1911. The contract as modified provided for the construction of a sewer of upwards of 15 miles in length, and is alleged to have been duly performed by and on behalf of the Paving Company, and the work was duly completed and delivered into the possession of the defendant, and was accepted by it on May 5, 1911.

The complaint covers 50 printed pages and sets up 55 claims, amounting in the aggregate to $891,952.86, for which it asks judgment, with interest. It

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contains allegations of wrongful interpretation of the contract by the engineer in charge of the work of construction; the compelling of the contractor to construct the work in accordance with such erroneous and arbitrary adoption of prices for the work not provided in the schedule of unit prices; failure and refusal to certify, and false certification as to work done; arbitrary rejection of certain materials; arbitrary change of plan; prevention of work; damages for delay; loss of interest from false certification of monthly estimates; wrongful deferring of part of final payment; wrongful delay in securing use of easements necessary for the prosecution of the work; increased cost of work, owing to arbitrary changes; arbitrary reduction of unit prices; additional expenses of removing débris accumulated during the delay wrongfully caused; and wrongful refusal to render decisions promptly.

The answer denies that there is any basis in law or in fact for the claims made by defendant, and it demands judgment against plaintiff for the sum of $223,380.44, with interest, for certain payments made to the plaintiff by the defendant, which it is alleged were made illegally and without authority of law.

John C. Wait, of New York City (Herbert McKennis, of New York City, of counsel), for plaintiff in error.

Charles A. Van Auken, of New Rochelle, N. Y. (Arthur M. Johnson, of Mt. Vernon, N. Y., of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This action has been brought against a public corporation to recover compensation for work done in the construction of portions of a public sewer. The court below has dismissed the complaint, and a question has been raised which is of great importance to these parties.

[1] Although the contract was made with the Bronx Valley sewer commission the act of the Legislature of New York which created the commission and which gave it authority to construct the sewer declared that the contracts should be executed "in triplicate by the contractor or contractors on the one part and the said sewer commissioners, acting for the county of Westchester, on the other part." The county of Westchester needed a sewer in the Bronx Valley for the protection of the citizens living there. The law under which the work was done authorized the sewer commissioners to construct the sewer within the county of Westchester, with an outlet sanitary sewer through the city of Yonkers, for the purpose of preserving the health of the people of Westchester county. The commissioners are directed to file their oaths with the clerk of the board of supervisors of Westchester county and to report annually to that board. The county treasurer of Westchester county is ex officio a member of the board of sewer commissioners, who are to carry on the work for the best interests of the taxpayers and the people of Westchester county. In fact, the act authorizing this sewer recognizes in almost every paragraph that the work is for the benefit of the county, and is to be built and maintained by it. It is not necessary to complicate a very plain situation by a strained and technical interpretation of the relations of the parties. In entering into the contracts with the Paving Company the sewer commissioners acted for the county of Westchester, and the county is bound by the contracts made by its duly authorized agents, and is liable to pay for the work done in accordance with the terms of the contracts.

In Horton v. Andrus, 191 N. Y. 231, 83 N. E. 1120 (1908), the constitutionality of the act which created the Bronx Valley sewer commission and authorized it to construct the sewer was sustained. The question came up in a taxpayer's action brought against the commissioners to restrain them from undertaking or prosecuting the work. The decision of the New York Court of Appeals in that case established the fact that the act not only did not violate the Constitution of the state, but also that the obligations incurred under the act were county obligations. The act authorized the issuance of bonds by the county to raise the funds necessary for the construction of the sewer. The state Constitution prohibits a county from incurring any debts except for county purposes. The court held that the act required the county to incur a debt, and that it was a debt for a county purpose. "We think that it plainly is" a debt for such a purpose, said the court; and it was also said that the fact that the county was ultimately to be reimbursed by the local assessments provided by the act did not relieve the county from its primary obligation. It seems that a large part of Westchester county, including the towns of White Plains, Greenburgh, Scarsdale, East Chester, the city of Mt. Vernon, and part of the city of Yonkers, is to drain into this sewer. This territory, constituting the Bronx Valley, drains into the Bronx river, which is described as an insignificant stream and utterly inadequate longer to dispose of the sewage of this area, which has become quite densely populated. The act, therefore, authorized the construction of a trunk sewer to collect all this sewage and divert it from the Bronx to the Hudson river. The court said that the Legislature might have prescribed some special method of joint action between the several municipalities through which the sewer was to be constructed, but that it was not obliged to take that course. It added that:

"It seems to us more in conformity with the general frame of the state government that the prosecution of a work which exceeded the domain of any one municipality should be conferred upon the next higher political organization which was capable of performing it and within whose territory lay the whole improvement."

Assuming, then, that the contract made by the Bronx Valley commissioners is the contract of Westchester county, and that the obligation is the county's obligation, and that the plaintiff is the creditor of the county, we come to inquire whether he can assert his rights in this action.

[2] It is claimed that under the County Law of the state of New York (chapter 16 of the Laws of 1909 [Consol. Laws, c. 11], formerly chapter 686 of the Laws of 1892), a creditor of the county has only a choice of remedy as against the county; that he must either submit his claim to the county auditing officials for audit, which in this case would be to the Bronx Valley sewer commission, or without presenting the claim for audit bring an action at law. The complaint shows that the claims involved here were presented to the Bronx Valley sewer commission and that that board refused to audit them. It is argued from this that the refusal remitted the plaintiff to mandamus and certiorari, or an action in equity. We cannot concur in this construction of the law. As to these claims the Bronx Valley sewer com-

mission are legally constituted agents of the county of Westchester for the auditing of the claims. They had the sole authority to audit them, and when they refused to do so the county was bound by their action, which is to be taken as conclusive evidence of the intention not to audit them. But the right of the plaintiff to recover for work done for the county, and accepted by the county, cannot be defeated by the refusal of the county to audit his claims. Neither is the contractor under any obligation to compel by mandamus the board of sewer commissioners to do .its duty. He has performed his work and not been paid, and the failure of the officials of the county to do what the law requires them to do cannot deprive the plaintiff of his right to bring an action at law to recover what is due under the contract.

The question raised here has already been passed upon in an analogous case by the Court of Appeals of New York. The provision of the County Law of the state provides for the bringing of actions by or against a county, and that a person having a claim may either sue directly upon it or present it to the supervisors for audit. The meaning of the provision was determined in New York Catholic Protectory v. Rockland County, 212 N. Y. 311, 106 N. E. 80 (1914). The court held that, if the claim there in suit was submitted for audit and disallowed erroneously, it could only be corrected on a review by certiorari; but if the board refused to audit it, or refused to recognize it, which the court said was equivalent to a refusal to audit, then the person having the claim had two courses open to him—one to compel an audit by mandamus, the other to bring an action directly against the county. The pleadings in the case at bar show that the claims of the plaintiff were submitted to audit by the board of sewer commissioners, as required by the act authorizing this work, and that audit was refused. If the claims had been audited and disallowed, then under the foregoing decision this action could not have been brought. The proper course would have been to review the disallowance by certiorari. But, not having been disallowed, we discover no reason why this suit could not be brought.

[3] The court below was of the opinion that the contracts these parties entered into were not made for the county as a whole, but only for a definite, specified portion of it, through which the sewer was being built, and that the duty of paying for and maintaining the sewer was a duty not shared by any other part of the county than the definite and specified portion. The theory of the court, therefore, was that the complaint should be dismissed, because, if the plaintiff obtained a judgment in the action, it would result in compelling the entire county to bear the expense of an improvement which the law intended should be borne by only that portion which was benefited by the improvement. It was upon that ground the court based its decision. Counsel for the plaintiff argued in this court that the motion papers were not broad enough to sustain the court in so deciding. The notice of motion stated that upon the pleadings in the action an application would be made to dismiss the complaint upon the merits, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and then specified the grounds for the claim of the defendant in that

behalf. The ground upon which the trial court based its opinion in dismissing the complaint was not one of the grounds specified in the notice of motion. The grounds specified related solely to the proper mode of proceeding, by presentation to the proper auditing authority, and then by mandamus and certiorari, or an action in equity.

In view of the conclusion at which we have arrived, it is not necessary to consider the technical objection which counsel has raised, and we shall pass upon the reason given by the court below for its decision. The court said:

"Such a judgment would be unlawful, because it is a greater and wider judgment than this plaintiff can ever be entitled to. There is no method suggested—and none occurs to me—by which in an action at law the authorities of the county of Westchester, or any of them, can be compelled to confine the tax levied, necessary to pay the plaintiff's demand (assuming it to be just and properly established), to the limited area which alone is responsible. It follows that this action at law is ill brought, and proceedings in equity must be resorted to."

We think the reason assigned constitutes no justification for holding that the plaintiff is not entitled to a judgment against the county. Under contracts which expressly provide that contractors are to be paid for public work out of assessments levied on the particular property benefited, the courts have held, in cases where the assessment has not been made, or, having been made, has failed because of some irregularity, that judgment may be had against the corporation, leaving it to take steps thereafter to reimburse itself for the money which it has been compelled to pay out of its general funds, by levying the proper assessment upon the special property benefited. And even if a public corporation has lost its power to make a subsequent assessment, that fact is no reason for declining to enter judgment against it. In Dillon on Municipal Corporations (5th Ed.) vol. 2, p. 1255, that distinguished authority states it as his opinion that:

"Where a contractor is to be paid by assessments, and the city has lost the power to make the assessments through the neglect or act of its officers, subsequently to the making of the contract, and without the fault of the contractor, a general liability attaches to the city to answer to the contractor for the resulting damages; the loss to the contractor therefrom being usually measured by the stipulated price."

It is true that the act under which these contracts were made provides for meeting the expenses connected with the work by the issuance by the county of bonds to be paid for by assessment and levy of taxes "upon the real property laid out on the plan and map approved as set forth in section 2 of this act as modified by this act, and not by levy upon the entire property in the county of Westchester." But the right which the creditor has to obtain payment from the county is not to be confused with the right of the county to obtain funds with which to pay his claim. The manner in which taxes can be paid to pay off the bonds related to the internal management of the corporation, and cannot affect the plaintiff's right to obtain a judgment upon his claims. In Davidson v. Village of White Plains, 197 N. Y. 266, 90 N. E. 825 (1908), Chief Judge Cullen writes:

"That this principle is correct cannot be gainsaid, but we must be careful to distinguish between a provision of law that prescribes how a creditor of

a municipal corporation may obtain payment of his claim and one which simply prescribes the method by which the corporation is authorized to obtain funds with which to pay the claim, merely regulating internal management of the corporation itself."

In Reilly v. City of Albany, 112 N. Y. 30, 19 N. E. 508 (1889), an action was brought upon a contract to recover for grading, paving, and flagging a street in the city of Albany. The contractor had substantially performed his contract in accordance with its terms, and was entitled to recover unless the provisions as to the time and mode of payment specified in the contract presented a defense to the action. It was contended that those conditions had not been complied with, and that therefore no liability had attached at the time the action was commenced. Under the terms of the contract the expense of the improvement was to be apportioned among the parties benefited, who were to be assessed for the sums for which they should be found liable. Payment was not to be made until the lapse of 30 days after due apportionment and assessment had been duly approved and confirmed by the common council of the city, and "until the same shall have been collected by the chamberlain from said assessments." In that case the cost of the improvements was to be paid by the city out of funds raised by an assessment upon the property of the locality benefited. The board of contract and apportionment made an apportionment and assessment which the common council approved and adopted. Interested parties protested the apportionment and assessment and the council's ratification of it. The matter was taken into the courts, and the proceedings were set aside as invalid. The board of apportionment refused to make a new apportionment or assessment. Thereupon an action was brought against the city to recover the contract price for the work. The action was sustained, and a judgment obtained against the city, which the Court of Appeals affirmed. The court held that, as the contractor had performed his work—

"he became entitled to demand payment for his labor when the funds for that purpose should be assessed, levied and collected by the regular agencies of the city having authority to raise means to discharge its liabilities. * * * When the contractor had performed his work according to his contract, he had no duty remaining to discharge, and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion and keep in operation the several agencies of the city government, over whom he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligations. That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement. For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty. Cumming v. Mayor, etc., of Brooklyn, 11 Paige, 596; Sage v. City of Brooklyn, 89 N. Y. 189; McCormack v. City of Brooklyn, 108 N. Y. 49 [14 N. E. 808]."

And the court declared that after the original apportionment and assessment was set aside it was the plain duty of the board to proceed to a new apportionment and assessment, and that its refusal to do so put no duty upon the contractor to seek a reversal of its determination by mandamus or otherwise. If the reason assigned by

the District Judge in the case at bar is sound, the Court of Appeals should have held that the plaintiff was not entitled to judgment, as it was a greater and wider judgment than he could "ever have been entitled to," because there was no "method by which the city could be compelled to confine the tax levied to the limited area which was alone responsible."

In our opinion the liability under the contracts involved is the liability of Westchester county. If it does not rest upon the county, it rests nowhere, for no political subdivision of the county has been created upon which the burden is imposed. The court below seems to have relied upon Holroyd v. Town of Indian Lake, 180 N. Y. 318, 73 N. E. 36 (1905). That case construes a different statute, chapter 451 of the Laws of 1900 of the state of New York. That act provided that the town board might establish a water district, and a permanent district organization was provided for the construction and maintenance of the water supply system, and the reasonable expenses were made a charge against the district. The action was brought against the town to recover damages for breach of a contract made by water commissioners of the water district. The court held that the action could not be maintained, for the reason that the contract was not made by the town, or by its officers, or for its benefit. · The statute provided that a town might be sued upon a contract lawfully made by any of its town officers. The water commissioners, with whom the contract was made, the court said, were not town officers, and—

"their powers are limited to the construction and management of a water plant for the exclusive benefit of the water district. They do not act for the town, and no action on their part can make the town liable."

We think the facts of that case clearly distinguish it from the case at bar. In this case no political subdivision of the county has been created; no sewer district as a corporate entity distinct from the county has been established. The sewer commissioners, by the express language of the act which created them, act "for the county of Westchester," and, as said in Horton v. Andrus, supra, they acted for the benefit of Westchester county in constructing a county sewer "for general benefit of the inhabitants of the county. The prosecution of such an improvement would be a county purpose." As the work was done by the county through its agents, the board of sewer commissioners, and for a county purpose, and as the title to the sewer is in the county, we are unable to discover any reason why the county should not pay for it. The plaintiff was working for the county, and is entitled to have its pay from the county. The plaintiff is not interested in the parties from whom the county collects. That is a matter between them and the county. There is no justification in holding up the plaintiff, who has done the work, until the persons who are to pay the county are ascertained, and the amount assessed against each.

The order is reversed.