## AMERICAN PIPE & CONSTRUCTION CO. v. WESTCHESTER COUNTY et al.

(Circuit Court of Appeals, Second Circuit.    July 10, 1923.)

No. 43.

i. Counties ⬅204(1)—Sewer commission held to have power to audit claims under contracts made by prior commission.

Where the members of a commission created by the Legislature to build a sewer for a county, were legislated out of office, and. others substituted to complete the work, the new commission *held* to have power to audit and settle claims arising out of contracts made by its predecessor.

2. Counties ⬅128—Provisions of a sewer contract as to conclusiveness of decisions of the engineer do not apply to questions between the sewer commission and the county for which it acts.

Provisions of contracts made by a sewer commission representing a county, as to the conclusiveness of decisions of the engineer, are for the settlement of disputed questions between the parties to the contract, and such decisions are not conclusive as between the commissioners and the county.

3. Counties ⬅204(4)—Action of authorized agent auditing claims is binding in the absence of fraud.

The action of a commission created by the Legislature to act as agent for a county in the building of a sewer, in auditing claims under contracts, is conclusive on the county, in the absence of fraud or illegality of payment.

4. Counties ⬅204(4)—Allowance of claims by sewer commission held binding on county.

A commission created by the Legislature to build a sewer, to be paid for by a county, with authority to make contracts and settle claims thereunder, may waive a provision of a contract making decisions of the engineer conclusive and acting in good faith, may audit and settle a claim of the contractor, though the engineer has decided against it.

5. Counties ⬅204(4)—Allowance of claims by sewer commission held binding on county.

Where a sewer contractor completed the work in accordance with the contract, to the approval of the engineer in charge, and the contract price was audited and allowed by the commission with which the contract was made, and authorized to act for the county, such action was conclusive on the county, and it cannot recover a part of such price in equity, on the ground that the commission, without consulting the contractor, had certain of the work done by another.

6. Appeal and error ⬅1022(3)—Findings of master, under consent order, approved by court, held conclusive; "opinion."

Where by a consent order the whole case was referred to. a special master, "to hear and report, with opinion," the "opinion" was equivalent to findings of fact and conclusions of law. and the findings of the master, approved by the District Court, are conclusive, where there was evidence on which to base them, even if against the weight of evidence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Opinion.]

7. Contracts ⬅284(4)—Decision by arbiter provided by the contract is conclusive on the parties, in absence of fraud.

Where a decision is made by an arbiter provided by the contract, and where the contract provides that his decision shall be final, his action, in the absence of fraud or such gross mistake as would necessarily imply bad faith or failure to exercise an honest judgment, is conclusive on the parties.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Counties ⟨⟩129—Contractor for sewer construction held entitled to damages for unreasonable suspension of work.**

A provision of a contract for sewer construction authorizing the commission to suspend the work "if it should deem it for the best interest of the district," without compensation to the contractor, further than an extension of time, does not cover a suspension because of failure of the commission to procure right of way, and the contractor is entitled to recover any damages legitimately resulting from such suspension for an unreasonable time.

Appeals from the District Court of the United States for the Southern District of New York.

Suit in equity by the American Pipe & Construction Company against the County of Westchester and others. From the decree, both parties appeal. Modified.

The American Pipe & Construction Company sued in April, 1914, to enjoin the defendants from entering into a contract for the building of a sewerage settling or reducing plant until the payment of the complainant's claim, and to restrain, by injunction, such construction, as well as the payment of interest on bonds issued for such work. It prayed that the amount of the complainant's claim be fixed, that a receiver be appointed for any funds in the hands of the defendants applicable to that purpose, and that personal judgment be taken against the County of Westchester. In March, 1914, an action at law was started by the complainant for breach of contract. The law action was tried and dismissed, and later that dismissal was reversed by this court. American Pipe & Construction Co. v. County of Westchester, 225 Fed. 947, 141 C. C. A. 71. A stipulation was later entered into whereby the pleadings and bill of particulars in that action were regarded as a pleading and bill of particulars in this equity action, and, pursuant to the stipulation, an amended answer was subsequently filed. By consent, a special master was appointed, "to take testimony, with all the powers and rulings upon the testimony as to its admissibility or otherwise, that he would have if he were a referee appointed by the state court, or as if the trial was had in open court in equity." The suit then became a claim for damages for breach of contract. The answer contained a counterclaim, which alleged illegal payments' theretofore made by the sewer commissioners in payment of claims presented by the complainant. The master, after many and protracted hearings, filed his report in February, 1919. In his report, he allowed one item of the defendant's counterclaim, and allowed certain items of the complainant's claims, with interest. The costs were ordered to be divided by the parties. The District Court, with some modifications confirmed the master's report. Exceptions were filed, and the case is here on appeal by both parties. The contract was made by the Mack Paving & Construction Company. The complainant was a subcontractor, and later, by assignment dated October 5, 1911, became the assignee of all the claims of the contractor.

John C. Wait, of New York City (Howard G. Wilson, of New York City, of counsel), for complainant.

William A. Davidson, Co. Atty., of Portchester, N. Y. (Charles M. Carter, of White Plains, N. Y., of counsel), for defendant Westchester County.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge (after stating the facts as above). The contract in question was made January 16, 1908. It was for the

Bronx Valley sewer, in the valley of the Bronx, along the line of the Harlem Railroad, and was known as work on sections 1 to 5, and tunnels through the hills under the city of Yonkers, known as sections 6 and 7. Sections 1 to 5 were about 12 miles in length, and sections 6 and 7 about 3 miles in length, making a total of about 15 miles. The sewer commission was created pursuant to chapter 646 of the Laws of 1905 of New York, and authorized the payment of moneys for the work of construction by the county of Westchester. The work was commenced in February, 1908, and completed in February, 1911. The work was let to the lowest bidder, plaintiff's assignor, after competitive bidding, and payment was provided for on a per lineal foot of sewer basis. The claims filed are 55 in number, amounted to $891,952.86, and are for breaches of the contract due to alleged wrongful or erroneous certification of the engineer; also additional work caused by errors or omissions of the engineer and damages for delay. Before the claims in question were made, the county had already paid to the contractor $1,867,872. Among other things, the contract provided as to the engineers' authority, "clause 20" authorizing changes in "the line and grade of that portion of the sewer, * * * providing such change does not * * * materially affect the character of the work to be done or alter the amount of the entire work." Clause 21 does not authorize any changes. It provides how alterations in line, grade, and dimension shall be compensated for "at the unit prices stated, according to the quantity actually done," and clause 22 provides:

"The engineer, subject to the approval of the commission, may change the type or class of standard section or foundation used from time to time as he may deem best. * * * "

We shall first consider the defendants' appeal. It appeals from the court's refusal to sustain its counterclaim, wherein it seeks to recover moneys audited and paid by the sewer commission in settlement of claims 1, 5, 31, and 43. It also appeals from allowances made by the master, as confirmed by the court, from certain items of the complainant's claims.

[1] In May, 1914, claims 1, 5, 31, and 43 were compromised and settled by the payment of $205,574.17 to the contractor. This was some $60,000 less than the claims filed by the contractor, and payment was made in full accord and satisfaction of these items of claims. The defendants contended below, and do here, that the complainant was not entitled to payment of these claims, or any part thereof. The allowances of these claims were made by the new or second sewer commission and were paid by it. The claim is that these payments were illegal, because the second commission had no power to audit the claims. It may be conceded that the rule of law is settled in New York state that a succeeding auditing body may not reaudit a claim on which its predecessor had finally passed. Osterhoudt v. Rigney, 98 N. Y. 222; People ex rel. Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739; People ex rel. Smith v. Clarke, 174 N. Y. 259, 66 N. E. 819. But, where the auditing body is legislated out of existence before it has completed its duties, the rule is different. An auditing board may reconsider its audit, however final, during its own life, until it has

come to the conclusion of its work. This action is taken as provisional only. Equitable Trust Co. v. Hamilton, 226 N. Y. 241, 123. N. E. 380.

The rule in the Equitable Case, we think, applies to a successor board or commission, created, not to undertake new audits, but to conclude the work left unfinished by the first. This sewer commission was created to build a sewer. Its personnel had changed, and, when the audits of the commission were made, it was composed of a different group of commissioners than made up its membership when first organized. The fact that its members were legislated out of office at once, and new ones substituted, did not change the work which remained to be completed when the new commissioners took the place of the old, with authority to complete the work which included auditing accounts and the payment of moneys due. The second commission was therefore free to decide on the claims as though nothing had been done by the first. Its powers necessarily included a decision whether the contractor did the work described by the contract. This, in turn, involved a decision as to what the work in fact was and what the contract meant.

[2] The engineer's decision was not conclusive as between the commission and the county, because the decision was intended only to settle disputes between the two parties to the contract, it being a part of the contract, and not the commission's power, which was fixed by the statute. If it acted out of its jurisdiction, the audit is illegal. Smith v. Hedges, 223 N. Y. 176, 119 N. E. 396. But, in general, it is conclusive. Albany City Nat. Bank v. City of Albany, 92 N. Y. 363. The act of 1907, c. 747, § 3 (see, also, chapter 646, § 14, of the act of 1905) directs the levy of a tax to pay all judgments and expenses against the county of Westchester in any way arising out of the construction or maintenance of the sewer. It was pursuant to the act of 1905, which provided that adjustments might be made of the work under the terms of the contract, that this application was made. It resulted in $205,574.17 being paid. The court said on the previous appeal:

"As to these claims the Bronx Valley sewer commission are legally constituted agents of the county of Westchester for the auditing of the claims. They had the sole authority to audit them, and when they refused to do so the county was bound by their action, which is to be taken as conclusive evidence of the intention not to audit them." 225 Fed. 947, 141 C. C. A. 71.

[3] The only ground upon which a recovery back might be granted upon this counterclaim under the authorities is where fraud is established, or where illegality of payment is established. Auditing and payment by the Bronx Valley sewer commission is conclusive upon an accounting. Nelson v. City, 131 N. Y. 4, 29 N. E. 814. There it was said:

"When the auditors honestly allow a claim, acting within their jurisdiction, and no fraud has been practiced upon them in procuring the allowance. the liability of the municipality is fixed, and the claim is no longer subject to dispute."

The commissioners having allowed these claims without fraud or illegality, and it appearing that they acted within their jurisdiction,

the liability of the county is fixed, and the claim is no longer subject to dispute. Indeed, the directing and actually paying the money is a recognition of the liability of the county, and precludes it from defending upon the ground that it was not originally liable to pay the debts in question. We find that there was no determination of these claims by the first commission, or during the term of office of the first commission. They never passed upon the merits of the claim, and these questions of liability were considered and determined by the second set of commissioners. There was no final certificate issued. There was no statement, resolution, or other communication on the part of the first commission that it accepted proof, or adopted any interpretation that the engineer may have made, either in the monthly or other estimates. There were various conferences, after objections and complaints, but nothing in this voluminous record shows that the matters were finally passed upon.

[4] Under the contract, the engineer was given power to interpret the terms and meaning of the contract. The second commission did not rest upon his interpretation, and did not insist that his determinations were final and conclusive. They were not bound to do so. In contracts of this character, the authority vested in the engineer, in such phrase as is here employed, is for the purpose of furnishing prompt method of disposing of such matters during the progress of the work. The commissioners have reserved in them the power of waiver of a determination in their favor by the engineer as against the contractor, if for any lawful reason they so decide. This they had authority to do under the contract. A payment made by it was within its authority and legal. The statute provides (chapter 646, § 13-b, Laws 1905):

"The various sums of money growing due from time to time under the terms of the several contracts made for the doing of the work and furnishing the material required by this act, shall be paid by the county treasurer on the certification of the said sewer commissioners, or such person or persons as may from time to time be designated by them, out of money or funds which shall come into his hands as provided in this act and which under the provisions of this act shall be applicable for that purpose. And all moneys which may become due and payable by virtue of the provisions of this act shall be paid by the county treasurer of Westchester county out of funds by this act applicable to that purpose."

Indeed, the Bronx Valley Sewer Acts gave broad powers to the commission for carrying on the work and payment therefor. They were, therefore, not obliged to agree with the engineer as to these determinations against the contractor.

[5] The master allowed a recovery to the defendants of $7,000, which "in equity and good conscience the complainant could not retain," for the cost of doing the work of supporting the railroad structures at the railroad crossings. Under sections 41, 43, 44, and 45 of the contract, the contractor was obliged to do this work. The work in question was found by the master to have been performed by the railroad company under a contract with the commission, and was not done by the contractor. $17,756.27 was retained by the commission as security for claims for this work. The second commission authorized the payment of the whole amount to the complainant. A resolution

of the commission authorized the payment, and stated that the claims of the railroad company could not be offset against the contractor. The master held that the contractor could not be deprived of his profit, but he should not be paid for doing work he did not do, and which was actually done by the railroad company. But it was paid by the commission, which had the power to do so, and unless it was illegally paid, and therefore beyond its jurisdiction, the court cannot interfere.

The contract prescribed that the work be performed by the complainant where the stretches of the sewer crossed the tracks. It is impossible to say whether the commission decided that section 43 or section 44 did not impose upon the complainant the obligation of doing the work for which it paid the railroad, or whether it thought that it was entitled to recover though it had been relieved from the work which it was bound to do. We find no satisfactory evidence upon which to decide upon what theory the commission acted. The master apparently supposed that it was fair to allow the set-off, though the defendants could not have recovered it in an action at law. We cannot agree with this rule. By statute the commission was created, with power to decide the meaning of the contract. Its determination, as we have said, is binding upon the county. The $7,000 which is now withheld from the contractor is part of an estimate of $17,756.27 made by the engineer.

Under the authorities, we think that all payments made by the second commission were a compromise made within the confines of its jurisdiction, and was not attended with fraud in fact or in law, and therefore were legal payments. The contractor did its work—built the sewer in accordance with the contract specifications and drawings. It received nothing but its price per lineal foot bid and stated in the contract. The contractor was not consulted, and took no part in the making of the contract for this work between the commission and the railroad company. The contractor cannot be charged with any expenses as to which he is not consulted, nor for the performance of work which he did not request the railroad company to perform. O'Keeffe v. City of New York, 176 N. Y. 297, 68 N. E. 588; Id., 173 N. Y. 474, 66 N. E. 194. The engineer made his progress estimates, including the moneys ordered by the master to be refunded to the defendants. His action is a conclusion that the work was performed by the contractor as required.

The case is different than the case of St. George Contracting Co. v. City of New York, 205 N. Y. 121, 98 N. E. 387, relied upon by the master. In that case, the contractor was to be paid a unit price per yard for excavation of the materials in a specified place. The material was excavated by a third party, and the contractor claimed the specified unit compensation and was denied a recovery. There was no dispute that the excavation of the material was work under the contract which the contractor had agreed to perform. In the present case, this essential element is absent. We feel constrained to hold that the audit and payments made by the commission are conclusive. American Pipe, etc., Co. v. Westchester, 225 Fed. 947, 141 C. C. A. 71; New York Catholic Protectory v. Rockland County, 212 N. Y. 311, 106 N. E. 80;

People ex rel. McCabe v. Matthies, 179 N. Y. 242, 72 N. E. 103. The allowance of $7,000 on the counterclaim is therefore reversed, and the complainant is entitled to a decree dismissing the counterclaim.

[6] We shall now consider the complainant's claims. As pointed out above, this suit is in equity. It has, by reason of a stipulation entered into, now the pleadings of a common-law action and a bill of particulars. An amended answer was filed in the law action, and it has been substituted in this suit. The reference to the master was upon consent and of all the issues. It is provided by stipulation that:

"This cause and the issues of law and of fact herein be referred to Hon. Walter C. Noyes, of the city of New York, counselor at law, as special master, to hear and report, with opinion, under and in accordance with equity rule 59 et seq. [198 Fed. xxxv, 115 C. C. A. xxxv]."

And the order provided that:

"All proceedings be had before the master, to hear and report, with opinion, in accordance with the rules of practice in equity applicable thereto."

We think this stipulation and order were in substance the form as in Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Connor v. United States, 214 Fed. 522, 131 C. C. A. 68; Hattiesburg Lumber Co. v. Herrick, 212 Fed. 834, 129 C. C. A. 288; U. S. Trust Co. v. Mercantile Trust Co., 88 Fed. 140, 31 C. C. A. 427. We think the word "opinion" in the present case is the equivalent of findings of fact and conclusions of law, and apparently the parties and the master so understood these words, and proceeded accordingly. The parties agreed to submit the whole case in all its aspects to the master for consideration and determination. Equity rule 5 (198 Fed. xx, 115 C. C. A. xx) does not change the result of this conclusion.

We are referred to Denver v. Denver Union Water Co., 246 U. S. 178, 38 Sup. Ct. 278, 62 L. Ed. 649, as contrary to this view. There the order specifically stated that the master was to report only such findings and conclusions as were "essential to the proper advisement of the court," and this the court held to mean that the same report was "for the advisement of the court." In the Rate Cases, the findings of the master have not the conclusiveness that they ordinarily have. Knoxville v. Knoxville Water Co., 212 U. S. 1, 29 Sup. Ct. 148, 53 L. Ed. 371; Consolidated Gas Co. v. Newton (D. C.) 267 Fed. 231. Therefore the findings of the master, as approved by the District Court, we held are conclusive, where they have evidence upon which to base them, and, even if against the weight of evidence, they must stand. Kimberly v. Arms, 129 U. S. 524, 9 Sup. Ct. 355, 32 L. Ed. 764; Davis v. Schwartz, 155 U. S. 636, 15 Sup. Ct. 237, 39 L. Ed. 289; Connor v. United States, 214 Fed. 522, 131 C. C. A. 68; Aronstam v. Consumers' Society (C. C. A.) 270 Fed. 463. In the last case cited, this court said:

"With these findings of fact thus presented to us, the only questions open to us are whether the conclusions of law are supported by the findings of fact. D., L. & W. R. v. Caboni, 223 Fed. 631, 139 C. C. A. 177. As it was said in Roberts v. Benjamin, 124 U. S. 64, 8 Sup. Ct. 393, 31 L. Ed. 334, 'The only questions open to review here are whether there was any error of law in the judgment rendered by the Circuit Court upon the facts found by the referee. The judgment having been entered "pursuant to the report of the referee," the facts found by him are conclusive in this court.'"

See, also, White v. Ball Eng. Co., 223 Fed. 618, 139 C. C. A. 164.

Much reliance is placed on clause 22 of the contract, which provides:

"22. The engineer, subject to the approval of the commission, may change the type or class of standard section or foundation used from time to time as he may deem best and he, in the exercise of his best judgment, shall be the sole and final judge and arbiter as to the intent and meaning of any clause in this contract, he shall be the judge of the tests to be applied and shall determine the definition and meaning of adjectives, adverbs, or of such words as approved, proper, possible, sufficient, due, required, directed, specified, designated, necessary, satisfactory, directions, permission, consent, permit, instructions, durable, such, similar and solid.

"The commission by due written notice to the contractor may delegate to or later recall its authority from its agents and such of its power and duties herein as it is not specifically required to do, 'in writing,' or 'in person'; but the right is reserved to it to do so, and it may review their acts and change and reverse them, upon which the contractor shall be entitled to and shall receive such compensation in money and such extension of time, as the engineer subject to the approval of the commission, shall determine upon, on account of such change or reverse. To be binding upon either party to this contract, all communications between them must be in writing."

The master felt constrained to follow the rule in the case of Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633. In that case it is said:

"I regard it as settled that it may; that within certain limits a contractor who is ordered by the proper representatives of the municipality to furnish materials or do work as covered by his contract which the former thinks are not called for by such contract may under protest do as directed and subsequently recover damages because he has been so required, even though it should turn out that the contractor was right, and that the official had no right to call on him to furnish such materials and do such labor. * * * There is no justification for applying it [the rule] where the municipal representative requires something which is so palpably and manifestly beyond the provisions of the contract that the contractor would not be confronted by any of the legal perils of an erroneous decision if he should refuse to obey."

[7] The rule for the federal courts is announced in Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106, and is that, where a decision is made by an arbiter provided by the contract, and where the contract provides that his decision shall be final, his action, in the absence of fraud or gross mistake as would necessarily imply bad faith or failure to exercise an honest judgment, is conclusive upon the parties. This rule has been constantly adhered to in the federal courts. Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Martinsburg, etc., Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Ripley v. United States, 223 U. S. 695, 32 Sup. Ct. 352, 56 L. Ed. 614; Merrill, etc., Co. v. United States, 241 U. S. 387, 36 Sup. Ct. 662, 60 L. Ed. 1058; Frisco Lumber Co. v. Hodge, 218 Fed. 778, 134 C. C. A. 456; Berger Mfg. Co. v. Huggins, 242 Fed. 853, 155 C. C. A. 411; Barker v. New York, 242 Fed. 350, 360, 155 C. C. A. 126. In the last case cited, this court said:

"This court is of the opinion following the doctrine recognized in Merrill-Ruckgaber Co. v. U. S., supra, that by virtue of the above provision the engineer had authority to determine every question as to the amount the contractors were entitled to be paid under the contract, and that his decision is final and conclusive as against the contractors, in the absence of fraud,

although not conclusive upon the city of New York. His final certificate was his decision as to what the contractors were entitled to receive for the work performed, and, as there is no charge of unfairness or fraud, his decision stands, and the court is not at liberty to go behind it."

What is stated in the Borough Construction Case is but stating the rule in other phrase. Hollerbach v. United States, 233 U. S. 165, 34 Sup. Ct. 553, 58 L. Ed. 898; Christie v. United States, 237 U. S. 234, 35 Sup. Ct. 565, 59 L. Ed. 933; United States v. Spearin, 248 U. S. 132, 39 Sup. Ct. 59, 63 L. Ed. 166; United States v. Atlantic Dredging Co., 253 U. S. 1, 40 Sup. Ct. 423, 64 L. Ed. 735. The contractor was bound by all the terms and requirements of the contract which it assumed. It cannot be permitted, under the guise of breach of contract, to recover extra or additional compensation for doing the work called for by the contract. There must be a fair and reasonable interpretation or construction of the contract as a whole—by the contractor as well as the engineer. White v. United States, 241 U. S. 149, 36 Sup. Ct. 532, 60 L. Ed. 929; United States v. Smith, 256 U. S. 11, 41 Sup. Ct. 413, 65 L. Ed. 808. In United States v. Gleason, 175 U. S. 588, 602, 20 Sup. Ct. 228, 233 (44 L. Ed. 284) the court said:

"While we are to determine the legal import of these provisions according to their own terms, it may be well to briefly recall certain well-settled rules in this branch of the law. One is that, if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless his performance is rendered impossible by the act of God, the law, or the other party. Difficulties, even if unforeseen, and however great, will not excuse him. If parties have made no provision for a dispensation, the rule of law gives none; nor, in such circumstances, can equity interpose."

Claims 3, 4, 17, 40, and 52 may be grouped and considered together. Claim 3 is for an alleged unreasonable refusal of the engineer to permit the use of certain sand and screenings in sections 1 to 5—screenings from rock crushes and material sand. Claim 4 is for damages for refusal to permit the use of gravel presented by the contractor for use. Both the method of rejection and the quality rejected are complained of. Claim 17 is for damages alleged to have been sustained by the contractor in not being allowed to use limestone or other suitable stone which was removed from the sewer trench and wasted, and which, it is said, could have been profitably crushed and used in the concrete. Claim 40 is for refusal to permit the use of screenings in section 6. Claim 52 is for an alleged arbitrary requirement to furnish Cow Bay sand. The master found that the engineer made no such requirement, but simply rejected local sand, and then the contractor furnished Cow Bay sand. Much testimony was taken as to these claims. The master found the facts against the contentions of the contractor. He found that the engineer exercised an honest judgment. The District Judge approved such findings. Under the rule of law referred to above, these conclusions are final and binding upon us. We find no error in the result below.

Claims 6 and 51 will be considered together. Claim 5, which was allowed and paid by the second commission, and which furnished one of the items sought to be recovered in the counterclaim, was based upon the theory that the engineer required an amount of cement in ex-

cess of that demanded by the stipulated concrete mixture. Claim 6 is for excess labor required to mix and place the excess cement in the batch, and the contractor seeks damages for this. The defendants claim that this was paid for by the payment of claim 5. The master's conclusion, approved by the District Judge, agrees that this item of labor was paid for in the payment for claim 5. The engineer had the absolute authority to interpret sections 5, 17, and 18 of the bid, and his decision was final and controlling under the contract. Claim 51 is for excess cement used in the tunnel in sections 6 and 7. This was found by the master to have been paid for in claim 5. These findings of fact we must and will accept. The master refused to find bad faith or arbitrary action in the conduct of the engineer. We find no error in the result below.

Claim 7 is for an alleged wrongful requirement that the concrete sewer be built in three operations, instead of one, thus entailing additional cost and expense to the contractor. The master found from the testimony that there are two methods for sewer construction—a one-operation method and a three-operation method. In the first, a continuous circular form is used and put in the concrete in one operation. In the second, the concrete is placed in in three operations; the invert is first placed, and then from the invert up to the springing line; after; the crown is placed on the other two parts—thus three operations. The proof satisfied the master that the contractor was not prepared to do, nor did he insist upon doing, the work in the one-operation method, nor was he prevented from so doing by the engineer. He further found that the contractor used the three-operation method without objection, and, moreover, held that the contractor was not equipped with forms such as were used in the one-operation method. The finding is therefore against the contractor on the facts, and we must accept these conclusions. We find no error in this result below.

Claim 8 is for finishing the interior of the sewer in three operations. After the concrete was set, the contractor was obliged to make a brush coating and troweling of neat cement to the concrete in three operations, instead of one. This undoubtedly was done as the work progressed and as the sewer was built in three operations. The complaint is that, because of this method, the engineer would not allow the brush covering to be done in one operation, but insisted that it be done at once, after each part of the concrete was laid. Under specifications 32 and 34, the engineer had discretion allowed him for the method of doing this work. Section 15 requires the work to be done to the satisfaction of the engineer. In his judgment this was necessary, in order to secure a proper union between the new cement and the concrete, and to have voids filled and the brush coating applied as each part was completed. This was within his power. The master did not find bad faith in this requirement. This is conclusive and binding upon us, and is therefore approved.

Claim 9 is for an alleged increased cost to the contractor by compelling him, after the completion of the sewer, to cut out joints in the concrete and refill them with cement to prevent leakage into the sewer. It is claimed that an excessive amount of such work was required

to be done, resulting in making the sewer more water-tight than the contract required. It was necessary to meet the specifications, even though the sewer was already tight enough. If there were cracks to be filled, the finished surfaces were not uniform and compact, as required by the contract. The determination of this was for the engineer, and there is no evidence of bad faith or fraud in this requirement of the engineer. We find no error below in this result.

Claim 11 is for delay in furnishing plans and making decisions. While the parties were negotiating whether type B or type D sewer should be built in certain places, these delays occurred. In considering the claims, the master below ruled that the requirement to use type D was arbitrary, in the sense that the contract contemplated type B in certain places in which the engineer had insisted upon type D. A recovery was allowed, and from this no appeal has been taken. Section 22 of the contract, above referred to, gave the engineer power to change the type of sewer in such manner as he might deem best, and if he was not unreasonable in his interpretation of the contract, if he acted in good faith, that was a loss which the contractor must assume. The engineer did not violate the contract when delays occurred because of his insistence upon type D, though type D was not in fact suitable. The negotiations which resulted in a compromise were due to the complainant's desire to dissuade the defendants from the extreme, though lawful, position which the engineer had assumed. The master expressly relieved the defendants from any claim of coercion in using the wrong type of sewer. What the engineer did here did not amount to a breach of contract, and no recovery will be allowed.

We will consider claims 13, 15, and 16 together. Claim 13 is for rock alleged to have been excavated in tunnel and not estimated and allowed. Claims 15 and 16 are for rock excavated in trenches, and claimed not to have been estimated and allowed. The engineer gave directions to estimate the rock by actual excavation, and not to the maximum line. This was a permissible interpretation of the contract, and was made in good faith. The fact that estimate 46 was only approximate is not material, for it was finally completed. The amount of rock actually excavated is in doubt according to the evidence. There was some evidence to support the conclusion reached below, and it is approved.

As to claims 15 and 16, complainant's proofs are contradicted by the evidence, which supports the computation made and accepted by the master. These estimates of quantities and figures as to estimates were matters for the engineer's determination, and may not be reviewed here, and are therefore approved.

Claim 20 is for labor cost to the contractor in building a stretch of the sewer in the open cut on Dakota avenue on section 4, between stations 120–60.05 and 126–91.31, in all 631.26 feet. There was no plan for earth tunnel, nor were contract prices fixed for the depth of the cut found. The master found that there was an agreement to do this work in open excavation. Type B was rock tunnel. This is what the contract provided between the points in question. It was impossible to do the work at that place as a rock tunnel. Earth tunnels were not

contemplated. The credit allowed for this work is based upon an incorrect estimate; it should be $18,782.20, instead of $17,766.25, a difference of $1,015.95. The allowance should therefore be $4,217.80, instead of that fixed by the master at $5,233.75. The District Judge reversed the master, disallowing this item. While it is true the commission made no contract for this work, still this was an instance where the contract and profiles show that rock was expected. The complainant, by order of the engineer, did the work, and was not paid in full therefor. This constituted a breach of contract, despite the provisions that the contractor was required to examine for himself. United States v. Smith, 256 U. S. 11, 41 Sup. Ct. 413, 65 L. Ed. 808. We think the District Judge was in error in disallowing this item, and the complainant will recover the same, as modified, with interest from December 9, 1912.

[8] Claim 24 is for damages for delay during a period of suspension of the work. On August 8, 1908, the commission informed the contractor to cease all work on section 4 between stations 190–4 and 231–14.87 and this suspension lasted until April 23, 1909, when the contractor was ordered to proceed with the work. There was a resolution of the commission that the contractor be instructed to suspend all work pursuant to section 53 of the contract. That clause provides:

"The commission is hereby authorized to, at any time, suspend the whole or any part of the work herein contracted to be done, if they shall deem it for the best interest of the district affected so to do, without compensation to the contractor, upon suspension, other than extending the time for the completion of the work an amount equal to the time of such suspension, together with such additional time allowance, if any, that the engineer may deem just on account of the period added extending through weather likely to prove less favorable."

There was a delay of 258 days in furnishing a right of way past and through the Hodgman Rubber Company's property. This delay could not be said to be for the "best interest of the district affected," and the commission could not, therefore, suspend the work without compensation for damages to the contractor. The engineer admits that there was delay in securing the consent of the Hodgman Company to build the sewer where located with reference to this property. It was a breach of the contract to fail to provide a right of way. Any damages legitimately flowing from this breach should be recovered by the contractor. The delay here was too long. They were bound to act with reasonable expedition in securing this right of way. We think 3 months was ample time. We think there was an unreasonable delay for the balance of the time. It was not necessary for the commission to pass any resolution that it thought a suspension necessary for the interest of the work. The measure of damages will be an allowance for the cost of extra haulage for 155 days, which excludes Sundays, at $10 per day, as testified to by Adams, amounting to $1,550.

Another item of damages is said to be the loss in maintaining the storehouse and general overhead. Even assuming the storehouse as necessary for the units they were designed to supply, there must be some proof of loss to the complainant, if it expected to succeed. The

storehouse in question had to be kept in commission longer than it otherwise would, namely, that work was prolonged on the section of the sewer which it served. However, this is nowhere proven. As to the overhead, if it appeared that the whole work went on longer than it otherwise would have because of this delay, it would be a basis for the claim. It does not appear, however, that there was not enough work being done at this unit to keep the contractor fully occupied as he would have been had he been allowed to work on this section. Recovery will be allowed in the sum of $1,550.

Claim 24a is for interest on moneys withheld and upon retained percentages. The master allowed interest in the sum of $5,675.11. This claim is for interest upon percentages below 85 per cent. of the estimate, and for interest on percentages retained in accordance with the contract after the completion of the work and after they were payable. Section 69 of the contract provided for monthly payments of 85 per cent. of the estimated value of the work performed, "provided the work is being prosecuted in conformity with the provisions of the contract as interpreted by the engineer, in which case, however, the quantity returned shall be such that the amount paid will be fairly due in accordance with the provisions and stipulations of this contract." It is claimed that the engineer did not follow this provision of the contract, and failed to authorize the payment of 85 per cent. of the estimated value of the completed work, but allowed only 95 per cent. and 99 per cent. thereof; that is a percentage of the stipulated percentage. Recovery is now sought of the interest upon the withheld advances. The master found that the contract gave the engineer discretion in the matter and said, "Apparently he did not regard the work in question as absolutely finished," and disallowed this item.

As to the second subdivision of this claim, which is a demand for interest on retained percentages after they became payable, the master allowed a recovery. He found that work was accepted on May 5, 1911, and that, if the original contract had not been changed, the time of final payment would have been 30 days thereafter, to wit, June 4, 1911, and interest would have begun to run on that date, assuming that there were no valid objections to the charge of the same. But he found that on May 5, 1911, the original contract was modified by a settlement then arrived at after some controversy. This settlement agreement recited that the original contract had been entered into, that the sewer had been substantially completed, also that there was urgent public need for its immediate use, and that the sewer as completed should be accepted. Then it provided:

"That *all moneys due and accrued to party of the second part* then [complainant] from parties of the first part do *by reason of this agreement now fall due,* except the sum of ten thousand dollars reserved therefrom because of the unfinished work of *restoring surface conditions.*"

Provision was made by which the complainant did not waive, surrender, or prejudice in any manner whatever its claim to any sum or sums due or accrued by the terms of the contract of June 16, 1908, or growing out of such contract. Paragraph 70 of the original contract must be deemed to have been modified by this acceptance agreement. There it is provided:

"Acceptance shall mean the payment of all moneys due the contractor by the commission, and his release from all sureties held by them, and shall occur at least six (6) months after completion."

This makes clear that acceptance shall mean payment of all moneys due the contractor by the commission and makes payment of all moneys coincident with acceptance. Retained moneys are moneys due to and earned by the contractor which were merely retained. This modification eliminated the 6 months period, and provided that moneys "by reason of this agreement now fall due." It was also a modification of clause 71, by eliminating the 30 days' grace period for payment by providing that the moneys "now fall due"—to immediately become payable. Prior to this modification agreement, the contractor was continuously demanding his money and the acceptance of his work, and the agreement of May 5, 1911, was entered into in satisfaction of those complaints. It provided for acceptance of the work on May 5, 1911, and that acceptance under the contract meant the payment of all moneys due the contractor by the commission. Paragraph 70 of the original contract eliminates all retention of any moneys and provides for full payment. Indeed, it appears that the defendants paid $15,000 on May 15, 1920, without waiting for the 6 months to elapse, or even the 30 days' grace to elapse. By their own construction of the modified agreement, they considered all moneys then due by reason of that agreement. The conclusion is inevitable that the defendants' interpretation of the modified agreement, by their own acts at the time, is contrary to their present claims. Lowrey v. Hawaii, 206 U. S. 222, 27 Sup. Ct. 622, 51 L. Ed. 1026. But it is argued that a lien was filed by the complainant for moneys due it from its assignor which prevented payment. But this lien was not filed until 5 days after May 5, 1911. This was after "by reason of this agreement" (of acceptance) all moneys become due. This modified agreement made the moneys payable without demand. Indeed, prior to entering into the agreement there were demands for the acceptance of the work and payment of the money. We find no error in the conclusion and calculations of the master as to this item, and it will be affirmed.

Claims 32 and 44 are for excess concrete to replace excessive excavation in sections 6 and 7. The bids called for were in the alternative—concrete block construction—and on monolithic construction. The bid accepted was for reinforced concrete block construction. Section 6 shows a sewer of 6 feet 6 inches inside diameter, and section 7 a sewer 8 feet 6 inches in diameter. The sewer barrel was to be 6 inches thick in section 6, and 7 inches thick in section 7. The obligation of the contractor under the contract was to excavate the rock, so that the hole or bore would accommodate these dimensions. The lines and leads given by the engineer were based upon the belief that the contractor was to install monolithic construction. The engineer set grade plugs and gave such distances to be measured therefrom that the required hole or bore was in excess of what it ought to have been, and therefore called for unnecessary excavation. In section 6 these measurements called for excavation of a ring of rock 5 inches thick, and in section 7 the excess ring was 5¾ inches thick. The contractor, by let-

ter dated August 31, 1908, protested against this unnecessary rock excavation. The claims were presented to the commission and paid by it for this excess excavation in sections 6 and 7, respectively. The present claim 32 is for fill of concrete for section 6—that is, to fill the ring with concrete as a back to the sewer barrel.

Type J did not require the tunnel bore to be concreted its entire perimeter, but only a little more than the lower half; hence the cubic yards of concrete are less than the rock excavation. It is for 1,532 cubic yards, at $10, or $15,320. Claim 44 is for section 7, and is for 238.95 cubic yards, at $10, or $2,389.50. This excess of concrete, together with the rock excavation, was ordered by the engineer; at least, we can charge the engineer with knowledge that the work was being done with this larger bore of the tunnels. Even assuming the protest was insufficient, and that a refusal to do work as directed is, in fact, not a protest, still we think that the complainant, having obeyed the direction of the commission, through the engineer, to do this work, was, in effect, a refusal to allow the complainant to do the work as prescribed in the contract, and therefore was a breach of the contract. The damages for such a breach would normally be the loss of profits for the work so refused. Here it would be the reasonable cost, plus a reasonable profit for doing the work as directed.

This work was done according to the changed plans, and the contractor could reasonably suppose that his loss, due to the refusal to do the work as provided for in the plans, profiles, and specifications of the contract, would not be increased by a compliance with the orders of the engineer. He was entitled to follow the directions of the engineer, and to do the work in the most acceptable method to the commission. Indeed, it would be a very exceptional circumstance which would justify a contractor refusing to follow such orders upon the theory that they would only result in greater loss to the commission. We do not think that this was such an unlawful variation in the method of doing the work. Concededly within the contract, the contractor could not assume the hazardous position of absolutely refusing. Indeed, the position of the contractor was found to be correct by the master. Under these circumstances, we think there was a breach of the contract, and that the complainant is entitled to recover for these items.

Claim 34 is for wrongful certification for tunnel work at the Bronx portal. When the designated station was reached at the location of the Bronx portal, quicksand was encountered, and it was necessary to change the location and extend the distance some 53 feet. This required an extension of the sewer, and the work was done as open cut work, with type I sewer installed. Payment was made upon the basis of contract prices for that type of sewer, and the question presented is whether anything further was due. It is conceded that the ground required this work to be done as open cut work, and the question is whether the contract provided for earth tunnel in this location, or for the installation of type I sewer, wholly or in part in earth. It was the contention of the defendants that earth tunnels were provided for in the contract, and they refer us to sections 96, 100, and 108.

The master found that these provisions did not include section 7 of the sewer, which embraces the location in question. By their terms they are limited to sections 1 to 5. There was nothing relating to earth tunnels in the provisions of the contract stating broadly what the contract prices include. The type I was for a rock type. Complainant was not limited to the contract prices for the installation of that type under different conditions, and should recover on a quantum meruit basis. The allowance below was a cost plus 15 per cent. profit, amounting to $5,758.50, upon which $2,279 was paid, leaving a balance of $3,-479.50. The engineer, by this order, breached the contract. It was due to the inaccuracy of the plans. Under the rule of United States v. Smith, 256 U. S. 11, 41 Sup. Ct. 413, 65 L. Ed. 808, referred to above, recovery may be had for this item. The master granted a recovery, but the District Court reversed this conclusion on the application to confirm his report. In this we think the District Judge was in error, and a recovery for this item will be reinstated, with interest from December 9, 1912.

Claims 36 and 53 will be considered together. Claim 36 was for delay of the engineer in making decisions, and claim 53 is an incident of the same claim for delay in removing stones from leased lands. Sheet 15 of the drawings showed concrete block construction and a detailed drawing where the roof is bad. It did not show in any detail for places where the roof is good, but for that refers the contractor to sheet 4, which is for concrete, not blocks. The contractor insisted that it was entitled to such a detail, and the engineer said that sheets 4 and 15 together were sufficient. After a delay of seven weeks, sheet 19 was prepared, and showed a detail of type J. Complainant claims that this detail was for concrete construction, but the master held otherwise. He held that plans were sufficient, and that the delay could not have been charged to the engineer after the receipt of sheet 19. The matter was compromised, and the complainant released the commission from all claims due to the above-mentioned change of plan, reserving their claims "arising out of any other work done or to be done under the said contract." We think this covered everything in the nature of delay, and finally showed the purpose of the parties. Both items were properly disallowed below.

Claim 50 is for increased height of the Leighton avenue shaft. This is for an increased cost due to building it 4.95 or 5 feet higher than required by the drawings. The contractor's own engineer, who did the work, testified that the reason it was raised was that it was a low point, and would have flooded with water or rain. The defendants admit that the shaft was raised, but contend it was raised to accommodate the contractor, who had piled up an amount of excavated materials about the shaft opening, and this raising obviated the necessity of removing such materials. The master found this claim on the facts as against the contention of the contractor. It could not be considered extra work, because it was not proved that there was any direction given under section 47 of the contract. An order in writing was required from the commission, in order that this may be considered extra work and paid for by the commission. We think this item was properly disposed of below by its disallowance.

We see no occasion to interfere with the allowance of interest, so far as the recovery has been allowed below. The complainant has not assigned error for failure to allow more interest.

Below the costs were divided. The action still remains in equity, although the pleadings and bill of particulars were incorporated in this action. We see no occasion to interfere with this conclusion.

Objection is made to the amount of the allowance to the master as an abuse of discretion. We think the allowance is excessive, and it will be reduced to $15,000.

We have examined the other assignments of error, and find it unnecessary to consider them, for they present no error. Interest will be allowed on the total amount awarded by the master from November 12, 1919.

We cannot pass the uncalled-for and undesirable reference to the master's fulfillment of his duties in this case, without proper reference to, and admonition of, the gentlemen who are responsible for the brief filed by the complainant. The cause was referred to a former member of this court, whose erudition and extensive experience and excellent standing in the profession render him one of the leaders of the bar. In the performance of this work he fulfilled every obligation with learning and integrity. For counsel to have stooped to so scandalous an attack as is found under the headings of "Master's Faith in Engineer Unwarranted" at page 111, "Master's Inexperience" at page 545, and "Master's Blindness" at page 546, in the complainant appellant's brief, makes it imperative that this court, in the protection of the honor of the profession, cause these pages to be stricken from the copies of the briefs on file with the clerk of this court. Indeed, this should be done, so that in other and calmer days, the counsel responsible for this language may be relieved of the ignomy which it would cause them, and so that the briefs found in the records of this court shall be kept within the respectful bounds of advocacy. Fortunately, charges so baseless are rare, and always fittingly visit condemnation on their authors.

The decree will be modified in conformity with this opinion and the complainant appellant will recover the costs of this appeal.

Decree modified.