## THE MARY WOODS.

### WOODS v. AYER & LORD TIE CO.

Circuit Court of Appeals, Sixth Circuit. December 14, 1928.

No. 5042.

W. P. Biggs, of Memphis, Tenn. (J. W. Canada, of Memphis, Tenn., on the brief), for appellants.

Dan F. Elliotte, of Memphis, Tenn. (C. C. Grassham, of Paducah, Ky., on the brief), for appellee.

Before MOORMAN, MACK, and HICKS, Circuit Judges.

HICKS, Circuit Judge. This is a suit in admiralty. Libelant is entitled to recover $7,543.58 and interest if it has sustained its claim by the weight of the evidence. The Calion Lumber Company sold the steamer Hosmer to Williams, Kelly, and Powell for $4,000. Williams and Kelly sold their interest to libelee Woods. Woods and Powell were partners under the name and style of "River Log & Towing Company." They used the Hosmer for towing logs. It is conceded that Capt. Kelly, the same Kelly who sold to Powell, was the master of the Hosmer before and up to the time of the transactions in question here, and that he received the compensation of a regularly licensed master. Powell and Woods desired to sell the boat, but it was in such need of repairs that it would not pass inspection, and it was therefore taken by Kelly, its master, under the orders of its owners, to Paducah, Ky., and on April 12, 1926, placed on the Ways in the Marine Yards of the libelant. It remained there about four weeks, during which time it underwent repairs for which libelant charged $16,053.07. On this account payments were made from time to time, aggregating $8,509.49 leaving a balance of $7,543.58 sued for herein, as for materials furnished and work done at the request and under the orders of the then joint owners, Woods and Powell and the master Kelly. The defense is that this work was done under an agreement between libelant and Woods and Kelly that the whole cost should not exceed $8,000, for which payment had been made, and that Kelly was not authorized to contract for repairs or improvements in a greater sum.

On April 15, 1926, Powell and Woods, then owners of the boat, went to Paducah and met Capt. W. L. Berry, the manager of the Marine Yards of the libelant, and along with Kelly all four examined the boat and entered into negotiations for its repair. It is undisputed that the matter given principal attention was the condition of the hull. S. E. Peak, foreman of ship carpenters on the yard, inspected the hull by order of Capt. Berry and reported that a new one would be necessary, whereupon it was agreed that libelant would furnish a new hull of the type known as scow bow gunnel hull. Capt. Berry testifies that he gave Woods and Powell an estimate upon the cost of the hull of $8,000, which was to include the decking, deck beams, floor beams, and sides, but nothing above the deck, and he gave them no estimate for the cost of any work upon the cabin; that Powell and Woods left Capt. Kelly, the master, there to inspect and supervise the work and directed him to do what Capt. Kelly ordered done, and stated that he was their representative and would answer for them and anything he ordered done to go ahead and do, and that he made the repairs to the cabin and other minor repairs under the order and direction of Capt. Kelly.

Upon the other hand, Powell and Woods both state that after it had been determined to build a new hull the matter of the repairs to the cabin came up; that they pointed out to Capt. Berry the condition of the cabin, that the necessary repairs were of minor importance, easy to be seen, such as the roof over the upper deck and some bannisters around it and a little patch work; and that it was agreed that the cabin should be repaired in these particulars and that the maximum cost of the entire work including both hull and cabin should not exceed $8,000.

While libelees concede that Kelly was master and remained with the boat during the entire time it was upon the Ways, they specifically deny that he had the authority to order extra work or vary the contract. They insist that Kelly was left with the boat only for the purpose of inspecting material going into the work. Woods and Powell are corroborated to some extent by Kelly himself, and upon the other hand Capt. Berry is corroborated in the main by the testimony of S. E. Peak, the foreman of ship carpenters, and by Oscar Scarborough, a supply man for libelant.

Upon this showing it probably could not be said that libelant had made out its case by a preponderance of the evidence, but there are other considerations entering into the matter.

Before Kelly as master placed the boat upon the Ways, he was required to sign the following agreement, to wit:

"Paducah, Ky., April 12, 1926.

"Ayre & Lord Tie Co., Marine Ways, Paducah, Ky.

"Gentlemen: This is our order for you to repair boat Steamer Hosmer. We agree to have our agent on the work at all times check-

468

ing the labor and material and o. k. the labor, and material sheet each day. If we fail to have our agent present and check these items or charges for labor and material so furnished, we will accept your figures and items charged without objection and will approve the items and charges as true and correct and will pay for same.

"River Log & Towing Co., by J. A. Kelly."

This was the customary form used by libelant in such cases. Kelly explains that he signed this instrument before he knew what he was signing, which is of course not a sufficient explanation in the absence of any evidence of fraud.

Although Kelly insists that he acted as nothing more than a watchman or inspector to see that proper materials went into the repair work and improper materials were kept out, yet the weight of the evidence taken in the aggregate indicates that all the repair work was done under the immediate supervision and direction of Capt. Kelly and that he specifically directed the repair work to be done upon the cabin. We do not mention these repair items in detail. They are fully set out in the testimony of Williams. During the progress of this work, libelant, as was its custom, kept a daily record of all labor and material entering into the work and the cost thereof. It is conceded that a copy of this record was given to Capt. Kelly daily, who for some time O. K.'d it and forwarded it to Mr. Powell's office at Memphis. Matters proceeded in this way for a time until, upon the request of Kelly, copies of these daily records, although O. K.'d by him, were not left with him, but were mailed directly to the post office address of the River Log & Towing Company at Memphis. It is not denied that these statements were received.

Upon the completion of the work upon the boat, her name was changed to the "Mary Woods," and about May 15, 1926, under government license procured by Capt. Kelly, Kelly as master returned the boat to her home port at Memphis, where she has been in service with Kelly continuing as master.

Upon the whole, laying altogether to one side the presumption of law that Kelly as master had authority to contract for these repairs, and considering the evidence alone without going into further detail, we conclude that the weight or preponderance of the evidence is with the libelant, and that the figures mentioned for the construction of the hull were only estimates, and that the whole work should be paid for according to the detailed schedules of cost and charges; and the judgment is accordingly affirmed.