**THE GRABIT.**

**TODD DRY DOCK, ENGINEERING & RE-
PAIR CORPORATION v. CITY OF
NEW YORK.**

District Court, E. D. New York.   April 30, 1929.

No. 8971.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for libelant.

Arthur J. W. Hilly, Corp. Counsel, and William J. Leonard, Asst. Corp. Counsel, both of New York City, for respondent.

CAMPBELL, District Judge. This is a suit in admiralty commenced by the libelant, as successor to Clinton Dry Docks, Inc., to recover either on the basis of orders from the respondent's commissioner in charge of the dredge, as alleged in the first cause of action, or the cost and value of said work either as damages or for breach of the general contract, as alleged in libelant's second cause of action, the sum of $20,043.31 for alleged extra work in addition to the sum of $27,780, paid to Clinton Dry Docks, Inc., under a contract made between it and the city of New York, on the 23d day of June, 1922, to furnish all the material and labor and all the machines, planking, tools, implements, and appliances necessary or proper for the purpose, and in good substantial and workmanlike manner make all required repairs to the dredge Grabit, together with all the work incidental thereto.

Specifications which in some instances were detailed and in others quite general, there being 46 items in all of the nature and items of work required, were prepared, and proposals for bids requested, but it was stated that the quantities were uncertain, and the contractors must satisfy themselves as to the quantities to be required and the additional conditions affecting the cost of performing the work specified.

The specifications describe the nature of the work to be the following:

"The work to be done under this contract is to make all required repairs to the dredge 'Grabit' and to completely equip the said dredge 'Grabit' in every respect ready for efficient operation in the Harbor of New York."

The contract in question was a lump sum contract, and the sum specified in the contract has been paid.

The items of work called for in the specifications have been properly performed, and the dredge has been delivered and accepted.

All the items of the bills sued for have been supplied and accepted, and the city has received and accepted the benefits of all the work referred to in the items sued for herein.

The respondent contends that the contract required the libelant to do, without further compensation, any and every thing that respondent at any time demanded of it by way of alteration, improvement, or repair to the dredge, and that the work sued for was therefore not extra, and libelant was not entitled to extra compensation, particularly as there were no written contracts awarded at public letting for the said additional work, and that the engineer ordering the work had no authority to do so, and that therefore the orders were contrary to and in violation of the said contract.

The libelant concedes that the intent of the contract was that it should be obliged to make all the repairs and replacements necessary to put the dredge in the same efficient working condition it was before falling out of repair, but contends that it was not obliged under the contract to make or furnish any improvements, or to furnish different and superior and more expensive type of equipment, not specifically or impliedly stated in the specifications, in order to make the boat more efficient; that it was not obliged to go to greater expense than mere repair simply to furnish something that would increase the length of the life of the dredge; that it was not obliged to tear out and replace without extra pay work once properly done, because of a change of ideas of the engineers in charge.

I do not entirely agree with either contention.

The making of a lump sum contract on the specifications as drawn was obviously with the intent expressed that the contractor should "make all required repairs to the dredge Grabit, and completely equip the said dredge Grabit in every respect ready for efficient operation in the Harbor of New York."

This clearly did not mean that the contractor, for the sum stated, was required to furnish anything to which no item of the specifications refers, directly or by fair implication, and, if anything of that kind was furnished by the contractor, on the order of the commissioner or his engineers, it was extra work and not included in the contract.

In dealing with the other items, however, we must bear in mind that the work re-

quired by the specifications was divided into two parts: (1) "To make all required repairs to the dredge 'Grabit'; (2) "equip the said dredge 'Grabit' in every respect ready for efficient operation in the Harbor of New York."

The word "repairs" has a definite meaning, and by the contract is applied to the dredge, not to the equipment.

Structural changes to the dredge, which would result in making the dredge different than it was before, unless specifically or by clear implication described in the specifications, or where the specification has been changed, modified, or altered, constitute extra work, but, where there has been a change, modification, or alteration, the only amount recoverable is the actual cost over what it would have been if the specification had been complied with, as the contractor in the lump sum payment was paid for doing the work in the way specified.

If work on the dredge, as distinguished from the equipment, has in any instance been completed as required in the specifications, and additional work of the same kind has been ordered and charged for on the bill, it can be considered as extra work only if it is clearly additional to that specifically described in the specifications, and is not included in the specifications under the provision of the specification that the quantities were uncertain, and the contractors must satisfy themselves as to the quantities to be required.

Up to this time we have considered repairs to the dredge, but it seems to me that the furnishing of equipment is on a different basis, as that is not limited by any provision for repairing equipment, but requires the equipment of the dredge ready for efficient operation in the harbor of New York.

Inasmuch as the specifications pointed out in what respects the dredge was to be equipped, the contract did not require the contractor, for the sum stated therein, to furnish any equipment to which no item of the specification referred directly or by fair implication, and, if any such equipment was furnished it was extra work; but this does not mean that, where a certain class of equipment was referred to in the specification, the contract was complied with by replacing or repairing the old equipment, unless such be the specific requirement of the specification, because obviously the intent of the contract and the specifications was to require the equipment by the contractor of the dredge for efficient operation, and therefore the requirement of equipment with a better form of valve, for instance, seems to me to be contemplated by the provisions of the contract which make the specifications a part thereof.

Of course, if equipment of the kind required by the engineers was furnished, and they subsequently required a change, that would constitute extra work.

On the trial, the respondent conceded liability for certain items as extra work, in some instances for the amount claimed, in others for a specific amount less than the amount claimed on the ground that such sums were equitably but not legally due.

Whatever be the motive of the respondent for making the concession, it is binding, but the concession as made must be as to each item accepted as made, or rejected, because respondent so limited its concession that, as to items where it conceded an amount less than charged, it did not concede liability generally, leaving open the question of the amount only, and therefore, if libelant is not willing as to any item to accept the concession as to the amount stated, then as to such items the libelant must reject the concession and prove that the same is extra work as defined in this opinion, and also the cost thereof.

My finding that there is some liability on the part of the respondent is not based upon the concession of some items on the trial.

This is not a suit at law but in admiralty, and the decisions of the law courts cited by the respondent are not controlling.

A court of admiralty looks to the substance and not to the form, and so the formal requirements, if any, of the charter do not control. Rodgers & Hagerty v. City of New York (C. C. A.) 285 F. 362.

In any event, most of the items which, as I have construed the contract, were extra work, were for less than $1,000 each, and therefore public letting of the contract as to them, under the terms of the charter, could be dispensed with.

The work in question was, in so far as the respondent is concerned, under the control of its commissioner of plant and structures, who was represented on the job by engineers, receiving daily reports of work and material, and bound to know that the items coming under the description hereinbefore given were extras, The Mary Woods (C. C. A.) 29 F.(2d) 466, and the libelant made perfectly clear during the progress of the work its claim that the items were extras.

Under paragraph D of the contract, the commissioner is given the power to determine the amount and the quantity or quality of the work which is to be paid for under this con-

tract, but the power to interpret the requirements of the contract rests with the court and not with the commissioner of plant and structures, and his attempts to do so are not final and binding on the contractor. Dock Contractor Co. v. City of New York (C. C. A.) 296 F. 377.

■ Undoubtedly the respondent, by the action of its commissioner, caused the work to be more expensive than it would have otherwise been, had the contract been performed as I have interpreted it, and it must pay for such items as are found to be additional as extras. Barker v. City of New York (C. C. A.) 242 F. 350; Messenger v. City of Buffalo, 21 N. Y. 196; Mulholland v. Mayor, etc., 113 N. Y. 631, 20 N. E. 856.

■ There is considerable doubt whether the commissioner or his engineers had authority to place open market orders for extras, but their power to stop the work and take it away from libelant, forfeit the bond, and enforce the penalties, to the prejudice of the libelant, cannot be questioned.

It is also undisputed that they threatened to do these very things unless libelant did the work and furnished the materials demanded, without further written orders and regardless of the increased cost to the libelant, and this was a clear breach of the contract for which the libelant is entitled to recover damages. American Pipe & Const. Co. v. Westchester County (C. C. A.) 292 F. 941; Horgan v. City of New York, 160 N. Y. 516, 55 N. E. 204; Messenger v. City of Buffalo, supra; Mulholland v. Mayor, supra; Uvalde Asphalt Paving Co. v. City of New York, 154 App. Div. 112, 138 N. Y. S. 1029; Merrill-Ruckgaber Co. v. City of New York, 160 App. Div. 513, 145 N. Y. S. 577; Uvalde Contracting Co. v. City of New York, 160 App. Div. 284, 145 N. Y. S. 604.

■ On the trial, the respondent contended that the filing by the libelant of a claim under section 246 of the charter (Laws 1901, c. 466, as amended by Laws 1910, c. 683) was a waiver and admission that libelant had no legal claim.

I cannot agree with that contention. No such defense was pleaded, and there is no evidence to show that there was any determination arrived at by the comptroller, or that the filing of such claim was other than a step in the negotiation of a settlement which was never arrived at.

The libelant is entitled to a decree for damages for breach of contract for such of the concessions as were made on the trial, for the value claimed on the items so conceded, and for such of the other concessions where the amounts for the items were less than the amounts claimed, where such concessions are accepted by the libelant, and for such other items as under the law, as stated in this opinion, may be found to be for extras, and in such amounts as may be found to represent the cost if not specified directly or by fair implication in the specifications, or of the difference in cost between the work and materials specified and the work and materials required by the commissioner of plant and structures, or his engineers, which shall be found to be extras.

And the special commissioner to be appointed herein will, on the reference, take testimony and report with his opinion, in addition to the concessions, such other items as under the law, as laid down in this opinion, may be found to be extras, and such amounts as may be found to represent the cost if not specified directly or by fair implication in the specifications, or of the difference in cost between the work and materials specified and the work and materials required by the commissioner of plant and structures, or his engineers, which shall be found to be extras.

A decree may be entered in favor of the libelant against the respondent as indicated in this opinion, with costs and the usual order of reference.