[Cite as *State v. Bethel*, 2011-Ohio-3020.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Julie A. Edwards, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-AP-35 |
| ROBERT BETHEL | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County Court
of Common Pleas Case No. 2010-CR-03-
0071

JUDGMENT:                    REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:      June 13, 2011

APPEARANCES:

For Plaintiff-Appellant:                For Defendant-Appellee:

RYAN STYER 0069730                      MATTHEW PETIT 0073919
Tuscarawas County Prosecutor            111 Second Street, N.W.
125 E. High Avenue                      Suite 302
New Philadelphia, Ohio 44663            Canton, Ohio 44702

MICHAEL J. ERNEST 0066627
Assistant Prosecuting Attorney
(Counsel of Record)

*Delaney, J.*

{¶1}  The State of Ohio appeals the trial court's entry suppressing marijuana found in the home of Defendant-Appellee Robert Bethel's. We reverse.

{¶2}  Appellee was indicted by the Tuscarawas County Grand Jury on one count of Trafficking in Drugs, in violation of R.C. 2925.03(A)(2)(C)(3)(c) and one count of Possession of Drugs in violation of R.C. 2925.11(A)(c)(3).  These charges arose out of a search of Bethel's home in the afternoon of September 8, 2009.  At approximately 2:00 p.m., Bethel called Community Mental Health (CMH) and was speaking to a counselor.  While Bethel was on the line, another individual from CMH called 911 and reported to the dispatcher that they had a Robert Bethel on the line who was talking about weapons and shooting someone.  The caller stated he believed Bethel had weapons in the house but did not know much more. The dispatcher then radioed the Uhrichsville Police Department and stated to the officer that a Robert Bethel had guns in the house, was threatening to commit suicide, hurt himself and others, but did not know if people were in the house.  The dispatcher also called medics and informed them the officers would clear the residence before medics responded.

{¶3}  Officer Jeremy Shaver of the Uhrichsville Police Department responded to the scene along with Officer Sean Smith in order to determine the well being of Bethel as well as any others who may be in the residence.  As they approached the residence, Bethel exited the home, on the phone.  At that time, Officer Smith secured Bethel and frisked him for weapons.  The officers asked Bethel if there was anyone else in the residence and Bethel said no.

{¶4} Officer Shaver, along with Sergeant Todd Beeman from the Village of Dennison who was called to assist the Uhrichsville police, then entered the home and conducted a protective sweep through the residence to determine whether there were any other people in the residence. Officer Shaver also stated that Appellee informed them that there was a dog in the residence. The dog was barking loudly when the officers entered the home.

{¶5} When Officer Shaver walked into the home, the first thing he observed was a coffee table and an end table on which the officer observed marijuana that appeared to be packaged for sale along with other drug paraphernalia. Officer Shaver stated that there were baggies with what appeared to be marijuana in them and plastic medicine bottles with "roaches" in them.

{¶6} Officer Shaver continued his protective sweep of the home and did not locate another person in the residence, but the officers did locate the dog which they restrained. They then had Bethel walk back into the house to show them where he kept the house keys so they could secure the residence while Bethel was transported to jail so that personnel from the CMH could meet with him and assess him.

{¶7} Sergeant Beeman was dispatched on a call of a "homicidal/suicidal" male. He went to Bethel's home and met Officer Shaver there. He went through the house and observed the same drugs and paraphernalia on the table. Beeman testified that he did not touch anything inside the residence. He stated that he was also looking for other people in the residence who may be in need of assistance or hurt.

{¶8} Officer Smith stated that according to the dispatcher's information, no one was aware if there were any other people inside the residence. He did not enter the residence, but stayed outside with Bethel.

{¶9} Appellee filed a motion to suppress, arguing that there were not exigent circumstances supporting a warrantless search of his residence. The trial court ruled in Appellee's favor, finding that the warrantless search of Appellee's residence was not based on sufficient exigent circumstances allowing the search, pursuant to *United States v. Barone* (1964), 33 F.2d 543,545; *Mincey v. Arizona* (1978), 437 U.S. 385, *State v. Burgess* (Nov. 4, 1999), 5th Dist. No. 99-CA-0035.

{¶10} The State of Ohio appeals and raises one Assignment of Error:

{¶11} "I. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS EVIDENCE."

I.

{¶12} In its sole assignment of error, Appellant, State of Ohio, asserts that the trial court erred when it suppressed evidence resulting from the defendant's encounter with a law enforcement officer outside of his home that resulted in the discovery of illegal drugs inside his residence.

{¶13} Appellate review of a trial court's decision to grant a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported

by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶14} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶15} The Fourth Amendment of the Constitution of the United States guarantees each citizen a right to be free from unreasonable governmental intrusions. Specifically, it states:

{¶16} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶17} "The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized,' U.S. Const., Amend. IV, even if the search is made pursuant to a warrant and based upon probable cause." *Florida v. Royer* (1983), 460 U.S. 491, 499, 103 S.Ct. 1319.

{¶18} The predicate for permitting seizures on suspicion short of probable cause "is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id., at 500, citing, e.g., *United States v. Brignoni-Ponce*, 422 U.S., at 881-882, 95 S.Ct., at 2580-2581; *Adams v. Williams*, 407 U.S., at 146, 92 S.Ct., at 1923.

{¶19} It is the State's burden to demonstrate that the seizure it seeks to justify was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

{¶20} The permissibility of certain law enforcement practices is judged by balancing the intrusion on the individual's Fourth Amendment interests against the promotion of legitimate government interests. See *Delaware v. Proust* (1979), 440 U.S. 648, 653-654, 99 S.Ct. 1391, 59 L.Ed.2d 660. Thus the question becomes whether the State's interest in sweeping a residence upon responding to a dispatch for possible suicide and possible weapons is sufficient to warrant this intrusion and whether the search policy in question is "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio* (1968), 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶21} We find that the instant search was justified when tested by both criteria from *Terry*. The government has a legitimate interest in conducting a search of a residence when they are called to that residence as a result of the occupant calling a mental health hotline and claiming that he is suicidal and has access to weapons, and that such an interest is more than sufficient to justify this search.

{¶22} An exception to the warrant requirement of the Fourth Amendment involves exigent circumstances. Exigent circumstances is synonymous with an emergency, whether it be actual or ongoing. *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290. In *State v. Hyde* (1971), 26 Ohio App.2d 32, 34, 268 N.E.2d 820, the Ninth District Court of Appeals explained the following:

{¶23} 'The right of the police to enter and investigate in an emergency without accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers. * * *.' *United States v. Barone* (C.C.A.2), 330 F.2d 543, at 545.

{¶24} "Breaking into a home by force is not illegal if it is reasonable in the circumstances.' 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent exigency or emergency." *State v. Burgess* (Nov. 4, 1999), 5th Dist No. 99-CA-0035, quoting *Wayne v. United States* (D.C.Cir.), 318 F.2d 205, at 212. See also, *State v. Oliver*, 91 Ohio App.3d 607, 632 N.E.2d 1382.

{¶25} In the treatise, "Ohio Arrest, Search and Seizure" (1999 Ed.), Professor Lewis Katz discussed the scope of an emergency search at 185-286, Section 10.5, as follows:

{¶26} "Exigent circumstances create justification for limited warrantless searches. The duration of the intrusion and the scope of the search are governed by the constitutional command of reasonableness, which will be evaluated in terms of the emergency. Once the emergency conditions have been alleviated, further intrusion must be sanctioned by a warrant. Any other interpretation of the emergency exception would create another general exception that would swallow the Fourth Amendment principle that warrantless intrusions are per se unreasonable. Furthermore, searches that extend beyond the scope of the actual emergency lead to an inference that the emergency is serving as a pretext to conduct a warrantless search." (Footnotes omitted.)

{¶27} The trial court did not make specific findings of fact. Consequently, we can afford no deference to the trial court's findings of fact because there were none. But the trial court indicated that it had reviewed the motion, the testimony and the arguments of counsel. We shall, therefore, directly examine the record to determine whether there is sufficient evidence of exigent circumstances.

{¶28} In this case, Officer Shaver testified that upon walking into the house looking for any additional occupants, he observed on the table right as he walked in, the drugs and paraphernalia. He continued to walk through the house for other people given the dispatch that Appellee was suicidal or homicidal and had access to weapons in the house.

{¶29} Because the drugs and paraphernalia were observed during the walk through of the emergency search for other occupants, we find the discovery of the drugs in plain view was before the emergency condition was alleviated. The discovery of the drugs was contemporaneous with the emergency search. See *State v. Burgess*, supra.

{¶30} We have reviewed the transcript of the suppression hearing, including the dispatch records, and we are satisfied the police officers acted reasonably based upon the information in their possession. The officers had reasonable cause to believe that Bethel was considering suicide and harming others, and the entrance into the home was necessary to protect others possibly in the residence, was reasonably related to those circumstances and necessary to verify Bethel's reports to CMH. Although there was no indication upon arrival that Bethel had actually harmed himself or others, the officers acted within their discretion that entry into the home was necessary to secure the safety of themselves, the paramedics, and other people possibly inside the home.

{¶31} While we realize that suicide is not a crime, Bethel could have been considered dangerous because police had been told he had weapons and wished to harm others. Police have a right and duty to respond to emergency situations. *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). Entering the home dispelled the uncertainty as to whether anyone was inside the home that might be in danger or pose

a danger to police officers or medics.  While this case presents a close question, we find exigent circumstances exist here.

{¶32} For the foregoing reasons, we reverse the decision of the Tuscarawas County Court of Common Pleas and remand for proceedings consistent with this Opinion.

By: Delaney, J.

Hoffman, P.J. and

Edwards, J. concur.

 

 

HON. PATRICIA A. DELANEY

 

 

HON WILLIAM B. HOFFMAN

 

 

HON. JULIE A. EDWARDS

[Cite as *State v. Bethel*, 2011-Ohio-3020.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ROBERT BETHEL | : | |
| | : | |
| Defendant-Appellee | : | Case No. 10-AP-35 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is reversed and remanded for proceedings consistent with this Opinion. Costs assessed to Appellee.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS