**[Cite as *State v. Schleter*, 2024-Ohio-514.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

**STATE OF OHIO,**                                     **CASE NO. 13-23-25**

    **PLAINTIFF-APPELLEE,**

**v.**

**MARTIN J. SCHLETER,**                               **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 22-CR-0213**

**Judgment Affirmed**

**Date of Decision:  February 12, 2024**

**APPEARANCES:**

    *John M. Kahler II* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Martin Schleter ("Schleter"), appeals the August 24, 2023 judgment of conviction and sentence entered against him in the Seneca County Court of Common Pleas, following his plea of no contest to Aggravated Possession of Drugs. On appeal, Schleter assigns error with the trial court's denial of a motion to suppress evidence. For the reasons set forth below, we affirm.

*Background*

{¶2} This case stems from an incident occurring in Tiffin, Ohio on December 4, 2021, which resulted in the discovery by law enforcement of a small quantity of methamphetamine in the home shared by Schleter and his girlfriend, Dawn Pena. The drugs at issue were observed in plain view by a police officer after he and several firefighters made a warrantless entry into the home in response to a 9-1-1 call about heavy black smoke that was pouring out of the home's chimney. After the methamphetamine was observed by the police officer in Schleter's home following the warrantless entry into the house, the drugs were subsequently seized pursuant to a search warrant.

{¶3} On October 26, 2022, the Seneca County Grand Jury returned a single-count indictment against Schleter, charging him with Aggravated Possession of Drugs, a fifth-degree felony in violation of R.C. 2925.11(A) and (C)(1)(a). On March 3, 2023, an arraignment was held and Schleter entered a plea of not guilty.

**{¶4}** On March 29, 2023, Schleter filed a motion to suppress the evidence seized by police following the warrantless entry of his residence on December 4, 2021. On May 12, 2023, the prosecution filed a response in opposition to the motion to suppress.

**{¶5}** A suppression hearing was held on May 12, 2023. On July 28, 2023, the trial court filed a judgment entry and decision overruling the motion to suppress. On August 4, 2023, the trial court filed a nunc pro tunc judgment entry to correct a typographical error in the July 28, 2023 decision.

**{¶6}** On August 23, 2023, Schleter withdrew his original plea of not guilty and entered a plea of no contest to the sole count of the indictment. A sentencing hearing was held that same date, and Schleter was sentenced to a five-year term of community control.

**{¶7}** On September 18, 2023, Schleter filed the instant appeal, in which he raises one assignment of error for our review.

### Assignment of Error

**The trial court committed reversible error in denying Defendant's Motion to Suppress Evidence and applying the exigent circumstances exception to the warrant requirement.**

**{¶8}** In the sole assignment of error, Schleter asserts that the trial court erred in overruling the motion to suppress filed by Schleter with regard to evidence discovered by law enforcement following the warrantless entry into his home. On appeal, Schleter challenges the constitutional propriety of the entry into his home,

but not the validity of the search warrant that was subsequently obtained to seize the evidence observed in plain view following the warrantless entry.

*Standard of Review*

**{¶9}** "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson,* 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

*Analysis*

**{¶10}** In the instant case, the trial court reviewed the evidence presented at the suppression hearing and made findings of fact in its judgment entry overruling the motion to suppress, as follows:

> On December 4, 2021, Detective Justin Nowak was working as a road patrol officer for the City of Tiffin Police Department and responded to a 911 call regarding a fire at a residence located at 94 Coe St., Tiffin, Ohio 44883. Detective Nowak testified that upon arriving at that location, Tiffin Fire Department had responded. Detective

-4-

Nowak testified that upon arriving there was thick black smoke coming from the chimney, which appeared to be a chimney fire. Detective Nowak testified that he did not see any smoke from any windows or flames. Detective Nowak testified that he attempted to make contact with the residents of the home, by knocking on the door.

Due to not being able to make contact with the residents, the fire department made entry. At that time, they were able to make contact with Martin J. Schleter and notified him of the possible chimney fire, and the fire department needed to come into the residence and investigate and check the source. The Defendant, Martin J. Schleter moved back and attempted to close the door. Detective Nowak prevented the door from being shut. Then Detective Nowak made contact with Defendant Dawn L. Pena and notified her of the situation. At this time, Detective Nowak did not see Defendant, Martin J. Schleter, but heard noises coming from the basement. Detective Nowak observed that both Defendant Martin J. Schleter and Defendant Dawn L. Pena did not seem concerned as to the emergency. Detective Nowak entered the home with the fire department, due to safety concerns based on the Defendants' actions, to make sure that all residents have [*sic*] left the residence due to being unsure of the status of the fire.

Upon entering the home, Detective Nowak and the fire department personnel went down to the basement and located the Defendant Martin J. Schleter in the basement. The basement was smoke filled. Detective Nowak instructed Defendant Martin J. Schleter to leave the basement. Detective Nowak then did a sweep of the basement to make sure no one else was in the basement, because there was a lot of clutter in the basement. When performing the sweep, Detective Nowak observed on a couch next to the wood burner, a tube with crystalline material, which the officer believed to be Methamphetamine. Detective Nowak had no intention to search the home for drugs. Both Defendants Dawn L. Pena and Martin J. Schleter were outside of the residence and denied having any illegal drugs. Detective Nowak then contacted Detective Eric England to let him know of his observation of suspected methamphetamines.

Detective Eric England testified. Detective England is employed by the Tiffin Police Department. Detective England was the on call Detective on December 4, 2021, and spoke with Detective Nowak as

to the tube found in plain sight containing a crystalline substance. Detective England responded to the scene, contacted BCI Agent Dave Horn and Detective Shawn Vallery to assist, due to concerns that methamphetamine was being made at the location. The home was taped off. Detective England requested and obtained a search warrant signed by the Honorable Judge Jay A. Meyer. Detective England testified that the probable cause for the issuance of the warrant was the direct observations of Detective Nowak. Detective England, during the execution of the search warrant, located the plastic tube on the couch in plain view. There were no other drugs located in the home. The tube was tested and contained methamphetamine. Detective England then requested a search warrant for the phone of Martin J. Schleter, based upon the probable cause for the issuance of the search warrant for Martin J. Schleter's residence, locating the tube containing Methamphetamine, finding packaging material, and based on his training and experience, that cellular devices are used in furtherance of drug activity.

Defendant Martin J. Schleter testified that resides at 94 Coe St., Tiffin, Ohio, in Seneca County. The residence is owned by his mom, and Defendant Martin J. Schleter and Defendant Dawn L. Pena reside there together. Defendant Martin J. Schleter on December 4, 2021 tried to build a fire in the wood burner using motor oil, wood, and paper. Defendant Martin J. Schleter did not think that the smoke was an issue. Defendant Martin J. Schleter wanted to stay in the basement to tend to the fire. Defendant Martin J. Schleter told the officer that the house was not on fire. Defendant Martin J. Schleter testified that shortly after being outside the residence he was handcuffed and searched, he had never given consent to enter the home. Defendant Martin J. Schleter felt his rights had been violated.

Defendant Dawn L. Pena did not provide any testimony.

(Judgment Entry and Decision, Docket No. 36).

{¶11} Our review of the trial court's findings of fact, based on the evidentiary record of the suppression hearing, reflects that the trial court's findings are

-6-

supported by competent, credible evidence and, therefore, we accept those factual findings. *State v. Roberts*, *supra*, at ¶ 100.

{¶12} We now turn to a de novo review of the application of the law to those facts. In this case, the trial court determined that the "exigent circumstances" exception to the search warrant requirement was applicable to the facts and justified the warrantless entry into the home and the brief search that occurred immediately thereafter.

{¶13} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Id.*, at 357.

{¶14} "Exigent circumstances" are one well-established exception to the Fourth Amendment search warrant requirement. *Payton v. New York*, 445 U.S. 573, 582–83, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The exigent circumstances exception is based on the premise that certain situations demand urgent police action, which may excuse an officer from failure to secure a search warrant. *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). When the government claims a warrantless search is valid under the exigent circumstances

exception, the search was usually a result of an emergency or dangerous situation. *Payton,* 445 U.S. at 583.

{¶15} "'Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry.'" *State v. Reilly*, 3d Dist. Seneca App. No. 13-19-28, 2020-Ohio-850, ¶ 13, quoting *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184 and 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). "'The duration of the intrusion and the scope of the search are governed by the constitutional command of reasonableness, which will be evaluated in terms of the emergency. Once the emergency conditions have been alleviated, further intrusion must be sanctioned by a warrant.'" *Id.*, quoting *State v. Bethel*, 5th Dist. Tuscarawas No. 10-AP-35, 2011-Ohio-3020, ¶ 26.

{¶16} There is no set list of exigent circumstances that justifies a warrantless search, but "exigent circumstances generally must include the necessity for immediate action that will 'protect or preserve life or avoid serious injury,' or 'will protect a governmental interest that outweighs the individual's constitutionally protected privacy interest.'" *State v. Crawford*, 3d Dist. Logan Nos. 8-04-21, 8-04-22, 8-04-23, 2005-Ohio-243, ¶ 19, quoting *State v. Nazarian,* 9th Dist. No. 04CA0017–M, 2004–Ohio–5448 at ¶ 10, citing *Mincey v. Arizona*, 437 U.S. 385, 392–93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

**{¶17}** Government officials responding to an active fire, or promptly investigating the cause thereof afterwards, is an exigent circumstance that has been repeatedly recognized by the United States Supreme Court. *See*, *e.g.*, *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), *Michigan v. Clifford*, 464 U.S. 287, 293, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984), *Welsh v. Wisconsin*, *supra*, at 750.

**{¶18}** In *Michigan v. Taylor*, *supra*, applying the doctrines of exigent circumstances and plain view, the United States Supreme Court held that "[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable'" *Id.* at 509. Further, "officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished." *Tyler* at 510. Also in *Tyler*, the United States Supreme Court explained that "*the exigency* justifying a warrantless entry to fight a fire" does *not* end – and "the need to get a warrant" does *not* begin – "with the dousing of the last flame": "this view of the firefighting function is unrealistically narrow." (Emphasis added.) *Id.* at 509-510.

**{¶19}** In this case, we find that the decision of the firefighters and the police officer to make a warrantless entry and perform a cursory search of Schleter's residence was justified by exigent circumstances, specifically the need to potentially protect life and property at that residence. In light of the evidence presented at the

suppression hearing, we agree with the trial court that the actions of the firefighters and police in entering Schleter's home were reasonable under the circumstances.

**{¶20}** Specifically, the firefighters and the patrol officer were dispatched to a "possible house fire" at 94 Coe Street following a 9-1-1 call from a third-party. (5/12/23 Tr., 6). Upon Officer Nowak arriving at that location along with personnel from the fire department, he observed heavy black smoke in the area, coming from the chimney. Nowak testified that the amount of smoke coming through the chimney and spreading throughout the neighborhood was "excessive" and indicative of a chimney fire. (*Id.*, 17). Because of that, the immediate concern was to evacuate any occupants of the residence due to the potential risk of physical harm. After firefighters got no response upon attempting to make contact with anyone inside of the home, the fire department personnel decided to force entry into the house in order to locate and extinguish the fire.

**{¶21}** The firefighters were able to get the front door open just slightly, but not wide enough to get through. At that point, firefighters realized that there was a person inside of the residence, subsequently identified as Schleter, who said he had a wood burning stove going for heat, and then retreated further into the home instead of opening the door for the firefighters. Firefighters then requested that Officer Nowak assist them in trying to get Schleter to evacuate.

**{¶22}** Because entry could not be made through the front door, Nowak and the fire department personnel went to a patio door at the back of the residence, where

Dawn Pena came to the door. Pena was advised that the house or chimney was on fire, that the occupants needed to evacuate, and that the fire department needed to enter. In response, Pena attempted to shut the door. At that point, Nowak and some of the firefighters stepped inside and could hear noises coming from the basement, which was accessed through the kitchen where the officials had entered. The firefighters went down the stairs, followed by Officer Nowak, and Schleter was located in the basement. Schleter was made to leave the residence.

{¶23} There was smoke in the basement and, while firefighters were attempting to locate the source of the fire, Officer Nowak made a cursory sweep of the basement to make sure no other persons were down there. In so doing, Nowak noticed what he suspected to be methamphetamine in plain view on the couch, next to the wood burning stove. At or near that time, the fire department officials ascertained that the fire was contained to the chimney area. Both Schleter and Pena were made to wait outside of the residence until the firefighters ensured the fire was extinguished.

{¶24} On those facts, the actions taken by the firefighters and the police were objectively reasonable, particularly when viewed in light of what was known to the officials at the time the warrantless entry and sweep of the house occurred, as opposed to evaluating the actions at issue in light what was learned by the officers after the investigation of the fire took place. The intrusion into the home was

minimal and was properly limited to addressing the exigent circumstances that were present.

**{¶25}** Accordingly, the trial court did not err in finding that the warrantless entry and search of Schleter's home was justified on the basis of exigent circumstances, being the immediate need to take action in order to protect lives and property.

**{¶26}** The assignment of error is overruled.

*Conclusion*

**{¶27}** Having found no error in the particulars assigned and argued by the defendant-appellant, Martin Schleter, the judgment of the Seneca County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**